**Warren WILLIAMSON,**
**Plaintiff-Appellant,**

v.

**SECRETARY OF HEALTH AND**
**HUMAN SERVICES,**
**Defendant-Appellee.**

**No. 84–3882.**

United States Court of Appeals,
Sixth Circuit.

Submitted Jan. 7, 1986.

Decided July 7, 1986.

Frank J. Neff, Barkan & Neff Co., L.P.A., Columbus, Ohio, for plaintiff-appellant.

Margaret M. Quinn, Asst. U.S. Atty., Dayton, Ohio, Nicholas J. Pantel, Asst. U.S. Atty., Cincinnati, Ohio, for defendant-appellee.

Before MERRITT, JONES and NELSON, Circuit Judges.

NATHANIEL R. JONES, Circuit Judge.

Warren Williamson appeals the district court's affirmance of the denial of his claim for supplemental security income, under 42 U.S.C. § 1381, *et seq.*, by the Secretary of Health and Human Services. On consideration of the record and briefs, we affirm the decision of the district court, although we reject part of its reasoning.

## I.

Williamson was fifty-three years old when he applied for supplemental security income in April 1981. He has completed the seventh grade. His work history includes working as a farm laborer in the 1950s, during which time he suffered a shoulder and back injury. He has also worked as a janitor, foundry laborer and factory worker. His last job was as a machinist's helper before he stopped working in February 1976.

Williamson claims that he is disabled due to a back impairment and mental impairments that include depression and retardation. In his prior 1978 and 1979 applications for disability benefits and supplemental security income, which were denied, Williamson claimed to suffer also from short-windedness, heart spasms and pain, back pain, arthritis and swelling of the feet, rectal bleeding and excessively frequent urination. The medical reports are as follows.

In June 1976, Williamson was hospitalized for a muscle spasm in his back due to a lower back strain from lifting. X-rays showed slight curvature of the spine due to scoliosis and minimal degenerative change.

In June 1978, Williamson's treating physician, David Siehl, D.O., reported that Williamson complained of back pain, intestinal pain, and rectal spasm. The doctor noted

mild stiffness in the back, but no great limitation of motion. He noted muscle irritability and reflex tension, which he found to be psychosomatic in nature.

In July 1978, Williamson was examined at Allied Medical, Inc. Dr. Griffin stated that Williamson could ambulate without aids and could bear weight equally on both legs. Williamson could bend forward 90 degrees and bend 20 degrees to each side. X-rays showed many vertebrae completely normal, but showed "some narrowing" of the sacro-iliac joints with "very mild focal areas of increased sclerosis."

Dr. Kisielius, a disability examiner, examined Williamson in August 1978. He found no severe limitation of motion and no abnormalities of reflexes, muscles, or senses. He stated that Williamson related well to others and had no severe restriction in his daily activities or interests. The doctor concluded that there was no evidence of an impairment that would prevent significant gainful activity.

During August and September of 1978, Williamson entered the hospital for hemorrhoidectomies and excision of perineal warts. In October 1978, Williamson was hospitalized for removal of a rectal polyp. There was no sign of postoperative bleeding, and recovery was routine.

In March 1979, Dr. Siehl reported that the most recent examination was "essentially negative except for low back ache," and stated that Williamson was "a neurasthenic anxiety-prone patient." In August 1979, Dr. Siehl said Williamson had mild stiffness in his shoulders and lower back, but had no great limitation of motion.

In an affidavit of August 1979, Williamson described his depression, fatigue, anxiety and insomnia. He described his withdrawal from his family and friends, and from his former enjoyments and activities. He emphatically denied being mentally retarded, schizophrenic, paranoid or psychopathic.

In March 1980, Williamson visited a psychiatrist, Dr. Graves. He described numerous disabilities to the doctor: back problems, rectal problems, muscle spasm, arthritis and rheumatism of the feet, tension and swelling of the eyes, insomnia, inability to lift things or bend over, and inability to walk very far or to tolerate cold weather, fumes, noise and family activities. In regard to his emotional problems, Williamson described withdrawal, depression, insomnia or excessive sleeping, unhappiness, irritability, and poor appetite.

Dr. Graves' impression was that Williamson was operating at an intellectual level of low normal or borderline. The doctor's impression was that Williamson "does not show a diagnosable mental disorder," although he did show "a reaction" to his physical problems. The doctor concluded that,

> *assuming confirmation of the somatic complaints* [relating to the trunk, body cavity, or body in general] *which he gave me originally*, it seems to me probable that he is a totally disabled individual and that his ability to participate in retraining ... would be seriously limited by his borderline level of intellectual functioning. The mild anxiety and depressive symptoms may be an aggravating factor, but are in effect the response or reaction to his chronic [physical] disability. In my opinion, he is totally disabled and unable to engage in any substantial gainful employment.

App. at 167–68 (emphasis added). Dr. Graves also answered a questionnaire regarding Williamson's limitations in eleven areas. None of the limitations was considered "very severe," and only two were considered "moderately severe." The others were "moderate" or "mild" limitations.

In June 1980, Williamson's prior claims for disability benefits and supplemental security income were denied. The administrative law judge in that prior proceeding determined that there was no severe physical impairment, and that the moderate mental impairment would not prevent Williamson from engaging in his past relevant work as an unskilled laborer. That prior determination is not before this court.

Williamson filed the current claim for supplemental security income in April 1981. In June 1981, Dr. Siehl reported that periodic examinations over the past two years showed no joint abnormality despite the patient's complaints of pain. Williamson complained of stiffness, but he was able to accomplish flexion and extension, though awkwardly. Despite some difficulty in squatting easily or walking on his heels and toes, there was "no abnormality in the gait or difficulty in ambulation." The doctor found that despite Williamson's difficulties, he was able to relate to others satisfactorily and could care for his personal needs and appearance. The diagnosis was mild peripheral-vascular disease; musculoskeletal tension, probably psychosomatic, with mild arthritis; rectal spasm due to sphincteric irritability; and chronic bronchitis and sinusitis.

Williamson visited a clinical psychologist, Daniel Barna, Ph.D, for a determination of his mental capability. Williamson's verbal score on the Weschler Adult Intelligence Scale was 70, which is borderline, and the performance and full scale scores were 67, which is classed as Mentally Defective. Williamson's highest score in any category was his Similarities score of 8, which is in the Dull Normal range and which means that he could learn job tasks by imitation if the tasks are demonstrated.

Barna believed that Williamson deliberately attempted to lower his score. Williamson repeatedly refused to attempt to answer questions, even extremely simple ones, replying that he did not know and could not guess. Barna described the test results as inconsistent, which he said further demonstrated that Williamson was not making a good faith effort to respond accurately. Barna stated that Williamson "grossly exaggerated his symptoms" on the Minnesota Multiphasic Personality Inventory, scoring high on the dissimulation index.

On hearing before the administrative law judge in March 1982, the ALJ concluded that Williamson suffered from some impairments, but that they did not significantly limit his ability to perform basic work-related functions. Williamson thus was found not to have a severe impairment, and benefits were denied. The Appeals Council denied review. The district court affirmed the denial of benefits, and Williamson appealed to this court.

## II.

The regulations set forth a sequential analysis for determining whether a claimant is disabled. The first step is to determine whether the claimant is engaged in significant gainful activity. 20 C.F.R. § 416.920(b). If not, the second step is to determine whether the claimant has a severe impairment, which is "any impairment or combination of impairments which significantly limits your physical or mental ability to do basic work activities." § 416.920(c). If there is a severe impairment, the third step is to determine whether the impairment meets or exceeds the criteria of one of the listed impairments in Appendix 1. § 416.920(d). If the claimant does not satisfy one of the listings, the next inquiry is to determine whether the claimant's impairment prevents him from performing his past relevant work. § 416.920(e). If it does not, the claimant is found not disabled. If the impairment prevents a return to former work, the claimant's residual functional capacity must be determined, *id.*, and it is then considered in conjunction with the claimant's age, work experience and education in order to ascertain whether the impairment or combination of impairments prevents the claimant from doing other work. § 416.920(f); *see also* Subpart P, Appendix 2, Tables 1–3.

In this case the ALJ concluded, at the second of these sequential inquiries, that the claimant Williamson did not have a severe impairment. We find this conclusion to be supported by substantial evidence. Williamson's own treating physician stated that there were no serious health problems. The only doctor who believed Williamson to be disabled, the psychiatrist, stated that his conclusion was based on the assumption that Williamson's

claimed physical disabilities existed. The I.Q. examiner stated that Williamson's score did not reflect his real status because Williamson was not putting forth a good faith effort on the tests. The ALJ expressly found Williamson's testimony not worthy of credit, and such credibility determinations ordinarily are given deference by the court. *Kirk v. Secretary of Health and Human Services*, 667 F.2d 524, 538 (6th Cir.1981), *cert. denied*, 461 U.S. 957, 103 S.Ct. 2428, 77 L.Ed.2d 1315 (1983). While an ALJ may not ignore a claimant's subjective complaints of physical pain, those subjective symptoms cannot serve as the basis for a finding of disability where, as here, they are not supported by medical signs or findings that would reasonably indicate a medical cause for such symptoms. 20 C.F.R. § 416.929.

We therefore uphold the Secretary's finding that there was no severe impairment as supported by substantial evidence. *See* 42 U.S.C. §§ 1383(c)(3), 405(g).

### III.

We cannot, however, ratify in its entirety the rationale of the lower court. An error of law was made by the magistrate, adopted by the district court, and argued by the Secretary on appeal.

Williamson contended before the district court that the Secretary could not find his impairment non-severe when he met the requirements in the Listing of Impairments. His score on the I.Q. test was 67, and therefore he argued that he satisfied the listing for mental retardation. *See* § 112.05(C) of Appendix 1 (listing requirement of an I.Q. of 60–69 and the existence of an additional, significantly restrictive, mental or physical impairment). The lower court rejected this argument and indicated that the Secretary need not have even considered the listings because the disability determination stopped at step two on a finding of nonseverity. The court's language implied that a person could actually satisfy the listing but still be found to have a non-severe impairment at the second stage of the disability determination. On

appeal, the Secretary concedes in her brief that Williamson's I.Q. score was 67, but asserts that the score is irrelevant because the listings are considered at step three, and in this case the ALJ stopped at step two, finding no severe impairment.

We cannot accept the Secretary's argument that, when the evaluation terminates at step two on a finding of no severe impairment, it does not matter whether the claimant satisfies the criteria in the Listing of Impairments. This view of the law is erroneous because it means that impairments that are serious enough to satisfy the listing can be considered not serious enough to be "severe" under sections 416.-920(c) and 416.921. Such a reading of the regulations is illogical.

■ We believe that if a claimant arguably satisfies the criteria of a listed impairment in Appendix 1, it is not proper to preclude a consideration of the listing by finding the impairment non-severe at the second stage of the inquiry. We recognize, of course, that in proper cases the evaluation of disability may terminate at step two upon a finding that the impairments are not severe.

We find no merit in [the claimant's] contention that the sequential procedure for evaluating disability, under which no further inquiry is necessary if a claimant is determined not to have a severe impairment, *see* 20 C.F.R. § 416.920(a) (1983), is improper. The requirement that an impairment be severe flows directly from the statute. *See* 42 U.S.C. § 1382c(a)(3)(B). Since the severe impairment requirement is an absolute one, in that if a claimant lacks a severe impairment he can receive benefits under no conceivable set of facts, there is no need for the Secretary to consider other factors, such as age, education and vocational skills, if this crucial element is lacking.

*Gist v. Secretary of Health and Human Services*, 736 F.2d 352, 357–58 (6th Cir. 1984).

Nevertheless, it is clear that a finding, at step two, that no severe impairment exists is fundamentally inconsistent with facts that show the listing is satisfied. Impairments that meet the criteria of the Listing of Impairments are by definition so clearly serious and disabling that the regulations require the Secretary to find the claimant disabled without further consideration of age, education or work experience. *See* §§ 416.911, 416.920(d); *see also Johnson v. Secretary of Health and Human Services,* 794 F.2d 1106 (6th Cir.1986). This court has described the showing necessary to prove a "severe" impairment as follows:

> [A]n impairment can be considered as not severe, and the application rejected at the second stage of the sequential evaluation process, only if the impairment is a "slight abnormality which has such a minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education and work experience."

*Farris v. Secretary of Health and Human Services,* 773 F.2d 85, 90 (6th Cir.1985) (quoting *Brady v. Heckler,* 724 F.2d 914, 919 (11th Cir.1984)). *See also Salmi v. Secretary of Health and Human Services,* 774 F.2d 685, 690–91 (6th Cir.1985). In view of this standard for determining when an impairment is not severe, any impairment that meets the criteria in the Listing of Impairments can hardly be classed as non-severe.

Consequently, if a court's reading of the record should reveal that the listing's criteria are satisfied according to valid tests and credible reports, an ALJ's finding of no severe impairment at step two cannot be found to be supported by substantial evidence. We do not mean to reorder the sequential process to require that the ALJ consider whether a claimant's impairment meets the listing before deciding whether the impairment is severe; we merely conclude that a finding of non-severity at step two cannot be supported by substantial evidence when it appears that the listed criteria are met.

This conclusion does not compel us, however, to reverse the district court. The facts of Williamson's case do not support his argument, as it appears that his impairments do not meet the listed criteria. Williamson has not satisfied the two requirements of section 112.05(C): first, the ALJ found that Williamson's score of 67 was not a valid measurement of his mental capabilities, a finding that is supported by substantial evidence; and second, the ALJ found that Williamson had no severe impairment, a finding also supported by substantial evidence, which means that he had no significant, additional physical or mental impairment as required by the listing. Although the ALJ never reached the question of section 112.05(C), his separate factual findings demonstrate, when considered together, that Williamson's impairments did not meet or exceed the requirements of that section.

In sum, the ALJ's factual findings, which became the findings of the Secretary, were supported by substantial evidence and were not tainted by any erroneous interpretation of the applicable legal standards. We therefore AFFIRM the judgment of the district court.