822 F.2d 59
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Barbara MONTGOMERY, Plaintiff-Appellant,
v.
SECRETARY OF HEALTH AND HUMAN SERVICES, Defendant-Appellee.
 No. 86-1664
 United States Court of Appeals, Sixth Circuit.
 July 6, 1987.
 
 Before KENNEDY, RYAN and BOGGS, Circuit Judges.
 RYAN, Circuit Judge.
 
 
 1
 Claimant Montgomery appeals a district court decision affirming the denial of Social Security disability benefits. We reverse.
 
 
 2
 Claimant Montgomery first hurt her back in a fall in 1963, had a recurrence of pain in 1975, reinjured her back in a bad fall in 1976, and kept working, while receiving treatment for her pain, until 1980. She has two years of college, and a 15-year work history, most recently a nine-year stint as an Assistant Payment Worker for the Michigan Department of Social Services. This was sedentary work, but included some lifting of files, so that it would be classed as calling for medium exertion.
 
 
 3
 The medical evidence is generally consistent. The most recent and most credible evidence suggests a painful and persistent lower-back muscle spasm accompanied by relatively minor arthritis and degenerative disc disease.
 
 
 4
 The claimant and a vocational expert testified before the ALJ. The key testimony from the vocational expert was (1) an opinion that the claimant's pain, if credible, would preclude any employment and (2) the following interchange between the expert and the ALJ:
 
 
 5
 'A. . . . She has a number of skills; light typing ability, record keeping skills, skill in dealing with the public, supervisory skills that are transferable to sedentary work.
 
 
 6
 Q. I see. How many sedentary jobs would these skills be transferable to and what would they be?
 
 
 7
 A. It would be approximately 45,000 of them in the Detroit area. They'd range from general office worker to office management positions, to case aid positions in human service agencies.
 
 
 8
 Q. And these primarily, of course, would be sitting jobs?
 
 
 9
 A. Yes, sir.'
 
 The ALJ denied benefits, finding that:
 
 10
 'The claimant's residual functional capacity for the full range of sedentary work is reduced by the requirement that she be able to sit or stand as necessary.'
 
 
 11
 The ALJ also found, inconsistently with the expert testimony and prior statements in his own opinion, that:
 
 
 12
 'The claimant does not have any acquired work skills which are transferable to the skilled or semi-skilled work activities of other work at the sedentary level.'
 
 
 13
 Despite these findings, and using the 'grid' as a guideline, the ALJ concluded that 'there are some 45,000 [jobs the claimant could perform] in the greater Detroit area.' The only evidence for this figure was the expert's testimony. The ALJ also found that the claimant's 'demeanor at the hearing directly belied her statements of debilitation,' although he noted 'some moderate signs of pain such as sitting on the forward edge of her chair.'
 
 
 14
 The ALJ relied upon the evidence from the claimant's treating physician, Dr. Dorfman, and accepted the restrictions, including the 'sit-stand option,' Dorfman placed upon claimant's activities. At the same time, the ALJ questioned Dorfman's diagnosis, commenting that Dorfman 'alleged severe muscle spasm in direct contradiction of other more objective, medical observers.' The remainder of the ALJ's opinion confirms, however, that the only doctor who found no evidence of muscle spasm was Dr. O'Hara, who treated the claimant 3-1/2 years before Dorfman did. Two other doctors who examined the claimant in late 1984, contemporaneously with Dorfman's report, also found muscle spasm.
 
 
 15
 We must affirm the Secretary's findings if they are supported by 'substantial evidence,' which 'means more than a mere scintilla of evidence, such evidence as a reasonable mind might accept as adequate to support a conclusion.' Farris v. Secretary of HHS, 773 F.2d 85, 90 (6th Cir. 1985) (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971)). 'Further, this evidence must be based on the record as a whole.' Harris v. Heckler, 756 F.2d 431, 435 (6th Cir. 1985).
 
 
 16
 'The regulations set forth a sequential analysis for determining whether a claimant is disabled. The first step is to determine whether the claimant is engaged in significant gainful activity. 20 C.F.R. Sec. 416.920(b). If not, the second step is to determine whether the claimant has a severe impairment, which is 'any impairment or combination of impairments which significantly limits your physical or mental ability to do basic work activities.' Sec. 416.920(c). If there is a severe impairment, the third step is to determine whether the impairment meets or exceeds the criteria of one of the listed impairments in Appendix 1. Sec. 416.920(d). If the claimant does not satisfy one of the listings, the next inquiry is to determine whether the claimant's impairment prevents him from performing his past relevant work. Sec. 416.920(e). If it does not, the claimant is found not disabled. If the impairment prevents a return to former work, the claimant's residual functional capacity must be determined, id., and it is then considered in conjunction with the claimant's age, work experience and education in order to ascertain whether the impairment or combination of impairments prevents the claimant from doing other work. Sec. 416.920(f); see also Subpart P, Appendix 2, Tables 1-3.'
 
 
 17
 Williamson v. Secretary of HHS, 796 F.2d 146, 149 (6th Cir. 1986).
 
 
 18
 The ALJ followed this sequence down through the final step of determining whether a claimant, who concededly has a severe impairment but whose impairment does not meet the Appendix 1 requirements, has the residual functional capacity to do work other than that performed in the past.
 
 
 19
 The ALJ expressly found that Montgomery cannot work unless she is permitted to 'sit or stand as necessary' to alleviate discomfort. Nonetheless, the ALJ relied upon expert testimony that 45,000 'sedentary jobs' exist in the area where Montgomery lives and that 'primarily' these are 'sitting jobs,' that is, not sit-stand jobs, to conclude that there are 45,000 jobs Montgomery could do in her area. This is simply illogical. As presented, the evidence does not prove that there are 45,000 jobs, or any jobs, that Montgomery could do.
 
 
 20
 The Secretary asks this court to infer that some of those 45,000 jobs must be supervisory jobs that Montgomery could do, sitting or standing as she chose. Making this inference would amount to supplying the key evidence necessary to support the denial of benefits in order to save the Secretary's case. That is not this court's role. There is no substantial evidence in the record that jobs exist that the claimant could do.
 
 
 21
 This circuit has held that sedentary work as defined by the Secretary's regulations contemplates substantial sitting as well as some standing and walking, and that alternating between sitting and standing . . . may not be within the definition of sedentary work. Wages v. Secretary, 755 F.2d 495, 498 (6th Cir. 1985).
 
 
 22
 Howse v. Heckler, 782 F.2d 626, 628 (6th Cir. 1986). While there are statements in the ALJ's opinion suggesting that Montgomery may have transferable supervisory skills that would permit her to perform work despite her physical limitations, those statements are directly contradicted by the finding that she does not have transferable skills.
 
 
 23
 Montgomery also challenges the ALJ's credibility determination. However, it would appear that the ALJ effectively gave complete credence to those portions of her testimony that were supportable by medical evidence or opinion in the record, including the limitations placed on Montgomery by her treating physician. While the ALJ must cite record evidence 'in addition to personal observation' in support of a finding of incredibility, Weaver v. Secretary of HHS, 722 F.2d 310, 312 (6th Cir. 1983), the ALJ is entitled to limit his credence to those claims of pain which are consistent with the medical evidence and opinion in the record.
 
 
 24
 We REVERSE the Secretary's decision denying benefits and REMAND for additional fact-finding on the availability of jobs suited to Montgomery's physical limitations and for clarification of the evident inconsistency in the ALJ's findings with regard to Montgomery's transferable skills.