**Ruby TACKETT, Plaintiff,**

v.

**Shirley S. CHATER, Commissioner of Social Security, Defendant.**

**Civ. A. No. 94–149.**

United States District Court, E.D. Kentucky.

June 12, 1995.

---

**2.** *See* 28 U.S.C. § 1447(d) (denying appellate review of an order to remand based on lack of subject matter jurisdiction).

Thomas W. Moak, Stumbo, Bowling & Barber, Prestonsburg, KY, for plaintiff.

John S. Osborn, III, U.S. Attorney's Office, Lexington, KY, for defendant.

## MEMORANDUM OPINION

UNTHANK, Senior District Judge.

## INTRODUCTION

Plaintiff brought this action to obtain judicial review of an administrative decision of the Department of Health and Human Services, pursuant to the provisions of the Social Security Act; at issue is the denial of her application for Widow's Insurance Benefits. The case is currently before the Court on cross-motions for summary judgment.

## APPLICABLE LAW

■ With respect to the plaintiff's widow's insurance benefits, such claims filed on or after January 1, 1991, or applications pending on or after that date, are to be evaluated under the same standards as are applied to other Title II disability claims. Omnibus Budget Reconciliation Act (OBRA) of 1990, Pub.L. No. 101–508, Section 5103. Accordingly, a review of the principles applicable to judicial review of these other claims is necessary.

The Sixth Circuit Court of Appeals has set out the steps applicable to judicial review of Title II benefit cases:

1. Is the claimant currently engaged in substantial gainful activity? If yes, the claimant is not disabled. If no, proceed to Step 2. *See* 20 CFR 404.1520(b), 416.920(b).

2. Does the claimant have any medically determinable physical or mental impairment(s)? If yes, proceed to Step 3. If no, the claimant is not disabled. *See* 20 CFR 404.1508, 416.908.

3. Does the claimant have any severe impairment(s)—i.e., any impairment(s) significantly limiting the claimant's physical or mental ability to do basic work activities? If yes, proceed to Step 4. If no, the claimant is not disabled. *See* 20 CFR 404.1520(c), 404,1521, 416.920(c), 461.921.

4. Can the claimant's severe impairment(s) be expected to result in death or last for a continuous period of at least 12 months? If yes, proceed to Step 5. If no, the claimant is not disabled. *See* 20 CFR 404.920(d), 416.920(d).

5. Does the claimant have any impairment or combination of impairments meeting or equalling in severity an impairment listed in 20 CFR Part 404, Subpart P, Appendix 1 (Listing of Impairments)? If yes, the claimant is disabled. If no, proceed to Step 6. *See* 20 CFR 404.1520(d), 404.1526(a), 416.920(d), 416.926(a).

6. Can the claimant, despite his impairment(s), considering his residual functional capacity and the physical and mental demands of the work he has done in the past, still perform this kind of past relevant work? If yes, the claimant was not disabled. If no, proceed to Step 7. *See* 20 CFR 404.1520(e), 416.920(e).

7. Can the claimant, despite his impairment(s), considering his residual functional capacity, age, education, and past work experience, do other work— i.e., any other substantial gainful activity which exists in the national economy? If yes, the claimant is not disabled. *See* 20 CFR 404.1505(a), 404.1520(f)(1), 416.905(a), 416.920(f)(1).

*Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir.1984).

■ Applying this analysis, it must be remembered that the principles pertinent to the judicial review of administrative agency action apply. Review of the Commissioner's decision is limited in scope to determining whether the findings of fact made are supported by substantial evidence. *Jones v. Secretary of Health and Human Services*, 945 F.2d 1365, 1368–1369 (6th Cir.1991). This "substantial evidence" is "such evidence as a reasonable mind shall accept as adequate to support a conclusion;" it is based on the record as a whole and must take into account whatever in the record fairly detracts from its weight. *Garner*, 745 F.2d at 387.

■ One of the detracting factors in the administrative decision may be the fact that the Commissioner has improperly failed to accord greater weight to a treating physician than to a doctor to whom the plaintiff was sent for the purpose of gathering information against his disability claim. *Bowie v. Harris*, 679 F.2d 654, 656 (6th Cir.1982). This presumes, of course, that the treating physician's opinion is based on objective medical findings. *Cf. Houston v. Secretary of Health and Human Services*, 736 F.2d 365, 367 (6th Cir.1984); *King v. Heckler*, 742 F.2d 968, 973 (6th Cir.1984). Opinions of disability from a treating physician are binding on the trier of fact only if they are not contradicted by

substantial evidence to the contrary. *Hardaway v. Secretary*, 823 F.2d 922 (6th Cir.1987). These have long been well-settled principles within the Circuit. *Jones*, 945 F.2d at 1370.

■ Another point to keep in mind is the standard by which the Commissioner may assess allegations of pain. If there is objective medical evidence of a medical condition, the court must determine if (1) objective evidence confirms the severity of the alleged pain arising from the condition, or (2) the objectively-established medical condition is of such severity that it can reasonably be expected to produce disabling pain. *McCormick v. Secretary of Health and Human Services*, 861 F.2d 998, 1002 (6th Cir.1988).

■ Another issue concerns the effect of proof that an impairment may be remedied by treatment. The Sixth Circuit has held that such an impairment will not serve as a basis for the ultimate finding of disability. *Harris v. Secretary of Health and Human Services*, 756 F.2d 431, 436 n. 2 (6th Cir. 1985). However, the same result does not follow if the record is devoid of any evidence that the plaintiff would have regained his residual capacity for work if he had followed his doctor's instructions to do something or if the instructions were merely recommendations. *Id. Accord, Johnson v. Secretary of Health and Human Services*, 794 F.2d 1106, 1113 (6th Cir.1986).

■ In reviewing the record, the Court must work with the medical evidence before it, despite the plaintiff's claims that he was unable to afford extensive medical work-ups. *Gooch v. Secretary of Health and Human Services*, 833 F.2d 589, 592 (6th Cir.1987). Further, a failure to seek treatment for a period of time may be a factor to be considered against the plaintiff, *Hale v. Secretary of Health and Human Services*, 816 F.2d 1078, 1082 (6th Cir.1987), unless a claimant simply has no way to afford or obtain treatment to remedy his condition, *McKnight v. Sullivan*, 927 F.2d 241, 242 (6th Cir.1990).

Additional information concerning the specific steps in the test is in order.

■ Step six refers to the ability to return to one's past relevant category of work.

*Studaway v. Secretary,* 815 F.2d 1074, 1076 (6th Cir.1987). The plaintiff is said to make out a *prima facie* case by proving that he or she is unable to return to work. *Cf. Lashley v. Secretary of Health and Human Services,* 708 F.2d 1048, 1053 (6th Cir.1983). However, both 20 CFR 416.965(a) and 20 CFR 404.1563 provide that an individual with only off-and-on work experience is considered to have had no work experience at all. Thus, jobs held for only a brief tenure may not form the basis of the Commissioner's decision that the plaintiff has not made out its case. *Id.* at 1053.

Once the case is made, however, if the Commissioner has failed to properly prove that there is work in the national economy which the plaintiff can perform, then an award of benefits may, under certain circumstances, be had. *E.g., Faucher v. Secretary of Health and Human Services,* 17 F.3d 171 (6th Cir.1994). One of the ways for the Commissioner to perform this task is through the use of the medical vocational guidelines which appear at 20 CFR Part 404, Subpart P, Appendix 2 and analyze factors such as residual functional capacity, age, education and work experience.

One of the residual functional capacity levels used in the guidelines, called "light" level work, involves lifting no more than twenty pounds at a time with frequent lifting or carrying of objects weighing up to ten pounds; a job is listed in this category if it encompasses a great deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls; by definition, a person capable of this level of activity must have the ability to do substantially all these activities. 20 CFR 404.1567(b). "Sedentary work" is defined as having the capacity to lift no more than ten pounds at a time and occasionally lift or carry small articles and an occasional amount of walking and standing. 20 CFR 404.1567(a), 416.967(a).

However, when a claimant suffers from an impairment "that significantly diminishes his capacity to work, but does not manifest itself as a limitation on strength, for example, where a claimant suffers from a mental illness . . . manipulative restrictions . . . or heightened sensitivity to environmental contaminants . . . rote application of the grid [guidelines] is inappropriate . . ." *Abbott v. Sullivan,* 905 F.2d 918, 926 (6th Cir.1990). If this non-exertional impairment is significant, the Commissioner may still use the rules as a framework for decision-making, 20 CFR Part 404, Subpart P. Appendix 2, Rule 200.00(e); however, merely using the term "framework" in the text of the decision is insufficient, if a fair reading of the record reveals that the agency relied entirely on the grid. *Ibid.* In such cases, the agency may be required to consult a vocational specialist. *Damron v. Secretary,* 778 F.2d 279, 282 (6th Cir.1985). Even then, substantial evidence to support the Commissioner's decision may be produced through reliance on this expert testimony only if the hypothetical question given to the expert accurately portrays the plaintiff's physical and mental impairments. *Varley v. Secretary of Health and Human Services,* 820 F.2d 777 (6th Cir.1987).

## DISCUSSION

The plaintiff, Ruby Tackett, was born January 6, 1936 (Tr. 30, 48) and has an eighth grade education (Tr. 37). She filed an application for Widow's Insurance Benefits on October 21, 1991 (Tr. 47, 49), stating that she was disabled due to high blood pressure, breathing problems, chronic kidney and bladder infections, and "swelling in stomach" (Tr. 59). After her application was denied initially and upon reconsideration, she requested and received a hearing before an administrative law judge (ALJ).

After hearing the plaintiff's testimony and reviewing the evidence, the ALJ found that the plaintiff was not suffering from any "severe" impairment. (Tr. 16). Accordingly, she was not disabled. (Tr. 17). The Appeals Council declined to review the case (Tr. 2–3) and this action followed.

At the hearing before the ALJ, Mrs. Tackett testified that her most serious problem was high blood pressure, which would go up for no reason and without warning every day, sometimes as frequently as every two hours. (Tr. 38). She could tell when it was elevated because she would turn red and feel dizzy.

(Id.). She would "stagger" if she was standing, and not know where she was. (Id.). It also affected her memory (Tr. 36) and vision (Tr. 37). The pressure would drop if she stood still. (Tr. 38). Her doctor had prescribed blood pressure medication, which she took once a day; it was effective (Tr. 41) but made her sleepy (Tr. 43).

Mrs. Tackett also said she had chest pains, which were brought on even by slight exertion such as walking across the street to her mailbox. (Tr. 40–41). She had been having these pains for two or three months. (Tr. 41). They would go away if she sat down and rested for an hour. (Id.). She was not taking any medication for this condition. (Tr. 43).

Other problems mentioned at the hearing included swelling of her hands and feet, for which she took a diuretic and had to elevate her feet, although she did not say for how long or how often (Tr. 44–45); an "infection" which she treated with unspecified creams (Tr. 44); and bad nerves, which seemed to be related to her hypertensive episodes (Tr. 31, 35), although one of her treating physicians, Dr. Harvey Page, had given her "nerve pills" several years earlier (Tr. 32). She was still nervous but had not mentioned it to Dr. Page. (Id.). She explained that she "dread[ed] to go to doctors" (Tr. 33), and did not like to take pills (Tr. 34).

Mrs. Tackett testified that she did not have a driver's license (Tr. 31), but she did visit her children and her brother (Tr. 39). Her daily activities included house cleaning, cooking, doing laundry, washing dishes, vacuuming and shopping. (Tr. 39, 45). She claimed that she needed help shopping because she could not remember what to get and if she made a list she would "look at it and it looks different from what I write down." (Id.). She also visited friends and family members (Id.) and went to church once a week (Tr. 40).

Records from the office of Doctors John H. Scott and Russell H. Davis show that they treated Mrs. Tackett between 1978 and 1992, primarily for urological checkups. (Tr. 78–82). The vast majority of the entries in their notes, including all of the entries since 1985, indicate that her urine tests were negative. (Tr. 78–80). Only three visits were documented after 1989. Concerning those last three visits, Dr. Scott noted on June 14, 1990 that her tests were negative and she was having "no trouble," and told her to return in six months. (Tr. 78). On January 8, 1991, Dr. Scott noted that she was coming down with flu but her urine tests were again negative and he asked her to return in one year. (Id.). On her last recorded visit, January 14, 1992, the urine test was negative and he recorded that she was "doing pretty good." (Id.).

Office notes from Dr. Harvey A. Page reflect only three visits by the plaintiff, all for her hypertensive condition. (Tr. 98). On November 13, 1991, her blood pressure was 170/106 and Dr. Page prescribed Procardia. (Id.). On March 2, 1992 her blood pressure had dropped to 150/84 and Dr. Page noted: "Doing well—b.p. ok—no pains." (Id.). On September 1, 1992, her blood pressure reading was 140/80, she reported no new problems, her chest was clear, and her heart had a normal sinus rhythm. (Id.).[1] In a letter to Mrs. Tackett's attorney dated November 11, 1992, Dr. Page stated that she "has [a] past history of cholecystectomy by Dr. Cassady and Chronic Recurrent Cystitis treated by Dr. Scott[; s]he is treated for hypertension with Procardia and has no functional limitations." (Tr. 97).

Dr. Barry Schumer conducted a consultative physical examination of the plaintiff on April 1, 1992. (Tr. 83). She stated that her chief complaint was shortness of breath, but she also mentioned hypertension (Id.) and postprandial abdominal bloating (Tr. 84). A physical examination revealed her to be in no acute distress. (Tr. 84). Her blood pressure was 140/80, described as "adequately controlled," and her vision without glasses was 20/70 right, 20/100 left, and 20/50 together. (Id., Tr. 85). Examination of her heart and lungs showed no abnormalities. (Tr. 84–85). Her extremities showed no cyanosis, clubbing, or edema, she had full passive range of motion in all joints, normal grip strength and ambulation, and she could both squat to the

---

**1.** There is no mention of any nervous condition or prescription for "nerve pills" in his records.

floor and bend over and touch the floor. (Id.) Neurological examination was also normal. (Id.). Spirometry testing showed breathing capacity within normal limits. (Tr. 85, 89). Chest x-rays showed "marked left ventricular prominence," old scattered calcified granulomata within the lung fields, and mild peribronchial fibrosis, but no evidence of cardiac decompensation or heart failure. (Tr. 85). In summary, Dr. Schumer concluded that the plaintiff was not "impaired secondary to any cardiopulmonary disease." (Id.). She had "some symptoms suggestive of reflux esophagitis" but he found "no evidence of impairment from any gastrointestinal disease." (Tr. 86).

In the Sixth Circuit, the Step Two severity regulation has been held to be a *de minimis* hurdle in the disability determination process. *Murphy v. Secretary of Health and Human Services,* 801 F.2d 182, 185 (6th Cir. 1986). An impairment can be considered not severe only if it is a "slight abnormality that minimally affects work ability regardless of age, education, and experience." *Farris v. Secretary of Health and Human Services,* 773 F.2d 85, 90 (6th Cir.1985). Essentially, the severity requirement may be used to weed out claims that are "totally groundless." *Id.,* n. 1. The Court concludes that this is one of the exceptional "totally groundless" cases properly dismissed at Step Two.

Mrs. Tackett is unquestionably hypertensive, but this condition is controlled by medication and the physician who treats her for this condition specifically stated that it caused no functional limitations. (Tr. 97). Mrs. Tackett never informed her treating physicians of her alleged breathing problems or her chest pains. Dr. Schumer found no objective evidence of *any* cardiopulmonary impairment, and both he and Dr. Page found that her chest was clear and her heart sounds normal. (Tr. 84–5, 98).[2]

Although Mrs. Tackett also testified to having problems with her "nerves," possibly related to her hypertension, once again there is no medical evidence clearly documenting

any such condition or recounting any actual limitations as a result. She stated that her nerves made it difficult even to do dishes (Tr. 33), but her daily activities as reported do not suggest that her nerves prevent her from engaging in normal activities in and out of the home. Further, she admitted that she had not brought the issue of her nervousness to her treating physician's attention recently.

As noted previously, Tackett was treated for kidney problems lately, on occasion, and Dr. Schumer found *some* suggestion of a gastrointestinal problem. Yet, Tackett never informed her treating physicians, as far as can be discerned from the record, concerning her complaints of stomach bloating and Schumer could find no functional limitations associated with her gastrointestinal complaints. Scott, who treated the kidney problems, mentioned no limitations.

Counsel for the plaintiff maintains on appeal that the ALJ did not properly consider her subjective complaints, especially her reasons for not seeking medical attention. The Sixth Circuit has held that, while an ALJ may not ignore a claimant's subjective complaints, they may not serve as the basis for a finding of disability where they are not supported by medical signs or findings that would reasonably indicate a medical cause for such symptoms. *Williamson v. Secretary of Health and Human Services,* 796 F.2d 146, 150 (6th Cir.1986). The ALJ considered the plaintiff's testimony (Tr. 15) but held, properly, that it was not corroborated by the medical evidence.

The decision will be affirmed.

### ORDER

In accordance with the Memorandum Opinion simultaneously entered in the above-styled action,

IT IS HEREBY ORDERED that:

(1) the Plaintiff's Motion for Summary Judgment is DENIED;

---

**2.** Mrs. Tackett stated at the hearing, which was held November 3, 1992 (Tr. 29), that her chest pains had started "about two or three months" before (Tr. 41). Her last visit to Dr. Page was September 1, 1992, just over two months before the hearing, and Dr. Page stated specifically that she had "no new problems." (Tr. 98).

(2) the Defendant's Motion for Summary Judgment is GRANTED; and

(3) the administrative decision will accordingly be AFFIRMED by separate Judgment entered this same date.

## JUDGMENT

In compliance with Fed.R.Civ.P. 58,

IT IS HEREBY ORDERED AND ADJUDGED that:

(1) the administrative decision is AFFIRMED; and

(2) the above-styled action is STRICKEN from this Court's active docket.