Mary L. SMITH–FELDER, Plaintiff,

v.

**COMMISSIONER OF SOCIAL SECURITY, Defendant.**

No. 99–73002.

United States District Court,
E.D. Michigan,
Southern Division.

June 26, 2000.

Mary S. Rigdon, U.S. Atty., Detroit, MI, for Defendant.

Kenneth F. Laritz, Clinton Township, MI, for Plaintiff.

## OPINION AND ORDER ADOPTING MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

ROSEN, District Judge.

On October 21, 1999, Magistrate Judge Thomas A. Carlson issued a Report and Recommendation ("R & R") recommending that the Court deny Plaintiff's Motion for Summary Judgment and grant Defendant's Motion for Summary Judgment. Plaintiff filed objections to the R & R on November 1, 1999. Having reviewed the parties' motions, the R & R, Plaintiff's objections, and the materials in the administrative record, the Court agrees with the analysis of the Magistrate Judge, and concludes that the R & R should be adopted.

In her objections, Plaintiff points to various evidence in the administrative record—primarily, her own testimony at the February 11, 1998 hearing before the Administrative Law Judge ("ALJ") and a "Daily Activities" questionnaire she completed in March of 1996—as refuting the conclusion of the ALJ as to the degree and severity of Plaintiff's mental impairment. Plaintiff further cites the repeated findings of her treating psychiatrist, Dr. Gary Pierce, that she was unable to work due to her anxiety and depression, as well as reports from other mental health professionals indicating that Plaintiff suffered from impaired concentration and ability to interact with others. Based on this evidence, Plaintiff contends that the ALJ erred in concluding that she is not disabled within the meaning of the Social Security Act.

■ To be sure, there is ample evidence in the record that Plaintiff suffers from a significant mental disorder. The ALJ recognized this, concluding that Plaintiff "has a severe mental impairment." (Administrative Record ("AR") at 22.) Yet, under the governing regulations, this is not the end of the matter. Rather, as stated in the R & R, once it is determined that a claimant's psychological impairment falls within one of the eight diagnostic categories of mental disorders set forth in the Listing of Impairments, the claimant must then establish that this impairment has resulted in functional restrictions that are "incompatible with the ability to work." 20 C.F.R. pt. 404, subpt. P, app. 1, § 12.00(A). These functional limitations are assessed by reference to so-called "paragraph B" criteria, which include (1) activities of daily living, (2) social functioning, (3) concentration, persistence and pace, and (4) deterioration or decompensa-

tion in work or work-like settings. 20 C.F.R. pt. 404, subpt. P, app. 1, § 12.00(C).

In this case, the ALJ first found that Plaintiff suffered from depression, an affective disorder found at § 12.04 of the Listing of Impairments. The ALJ then turned to the four "paragraph B" criteria for this disorder, and found that Plaintiff's restrictions in these four areas were moderate in severity. Under the regulations, moderate limitations are not sufficient to establish a disabling mental disorder. Rather, these limitations must be deemed "marked," "frequent," or "repeated" in at least two of the four areas. *See* 20 C.F.R. pt. 404, subpt. P, app. 1, § 12.04(B). The Court, like the Magistrate Judge, concludes that the ALJ's findings as to Plaintiff's functional limitations are supported by substantial evidence in the administrative record.

In arguing to the contrary, Plaintiff focuses primarily on the "concentration" and "social functioning" portions of the "paragraph B" criteria. Regarding the first of these areas, Plaintiff points to the report of one of the psychiatrists who examined her, Dr. Richard Feldstein, stating that Plaintiff "demonstrates impaired concentration." (AR at 244.) Plaintiff also cites the finding of her treating psychiatrist, Dr. Pierce, that she "often" suffers from deficiencies in concentration. (AR at 251.) Even accepting Dr. Pierce's findings, however, a claimant who "often" exhibits lapses in concentration falls squarely in the middle of the five-point scale used to measure the degree of functional loss in this area. *See* 20 C.F.R. § 404.1520a(b)(3). To be considered severely limiting, these failures of concentration must be deemed

"frequent" or "constant." *Id.* Moreover, the ALJ considered these medical evaluations, as well as Plaintiff's own testimony as to her loss of concentration while performing daily activities, yet pointed to other evidence in the record—for example, Plaintiff's report of her activities (including driving, reading, doing crossword puzzles, and taking public transportation), and the psychiatric reports stating that Plaintiff was able to speak in a coherent and goal-directed fashion and to recall several objects after the passage of a few minutes—in reaching the conclusion that Plaintiff's lapses in concentration occurred "often," but "no more than that." (AR at 23.) The Court agrees with the Magistrate Judge that this finding is supported by substantial evidence.

Next, Plaintiff challenges the ALJ's conclusion that her social functioning is no more than moderately limited. Plaintiff cites her own testimony as to her withdrawal from social situations,[1] and the reports of psychiatrists noting Plaintiff's impaired capacity to deal with the public, co-workers, and supervisors. The ALJ, however, did not deny this impairment, but merely found that it was "moderate" in severity. (AR at 23.) As support for this determination, the ALJ noted (i) that Plaintiff appeared cooperative, pleasant and relaxed during psychiatric evaluations, (ii) that one psychiatrist reported that Plaintiff got along well with her family, friends, and neighbors, and (iii) that Plaintiff was able to run errands, go shopping, attend church regularly, and maintain her psychiatric treatment schedule despite her impairment. The Court finds that this evidence is sufficient to sustain the ALJ's

---

1. The R & R states that Plaintiff was able to "socialize with friends and relatives on a regular basis." (R & R at 3.) As Plaintiff points out, however, her testimony before the ALJ fails to support this finding, and the "Daily Activities" questionnaire she completed on March 20, 1996 indicates that she did not visit with family or friends at all. (AR at 122.) Nevertheless, the record is not wholly one-sided on this issue. Specifically, in a subsequent questionnaire dated August 20, 1996, Plaintiff stated that she visited with a friend every two weeks, (AR at 132–33), and two of Plaintiff's friends indicated in questionnaires that they saw her at least once a week, (AR at 137, 143). In any event, the ALJ's determination does not rest upon a finding as to the extent of Plaintiff's interaction with her friends and family, so any misstatement in the R & R as to this issue does not affect the Court's analysis of the administrative decision under review.

conclusion that Plaintiff's social functioning is only moderately limited.

The Court acknowledges that the assessment of Plaintiff's social functioning presents a close question, with significant evidence of a severe impairment. However, much of this evidence consists of Plaintiff's own testimony. The ALJ, who is uniquely situated to make credibility determinations, found that certain portions of Plaintiff's testimony were exaggerated, not wholly credible, and contradicted to an extent by the objective medical evidence. Such determinations are entitled to deference in this Court's review of the ALJ's decision. *See Williamson v. Secretary of Health & Human Servs.*, 796 F.2d 146, 150 (6th Cir.1986). Moreover, as noted earlier, even if the degree of Plaintiff's impairment in this area were deemed "marked" rather than "moderate," this single factor, standing alone, would not tip the balance sufficiently to overturn the ALJ's decision.

Finally, Plaintiff objects that the ALJ's hypothetical question to the Vocational Expert ("VE") did not accurately reflect the extent of her mental impairment. However, the VE was asked to offer an opinion as to work involving only a "mild" amount of stress and only "simple one, two or three step operations." (AR at 53.) The Court finds that this hypothetical question properly comports with the evidence and findings of the ALJ as to Plaintiff's moderate limitations in concentration, social functioning, and tolerance of stress.

Accordingly, for the foregoing reasons,

NOW, THEREFORE, IT IS HEREBY ORDERED that the Magistrate Judge's October 21, 1999 Report and Recommendation be, and hereby is, ADOPTED by the Court.

IT IS FURTHER ORDERED that, for the reasons stated in the R & R and set forth above, Plaintiff's Motion for Summary Judgment is DENIED, and Defendant's Motion for Summary Judgment is GRANTED.

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

CARLSON, United States Magistrate Judge.

*RECOMMENDATION:* Plaintiff's Motion for Summary Judgment should be DENIED, and that of Defendant GRANTED, as there was substantial evidence on the record that claimant had retained the residual functional capacity to perform a significant number of light, unskilled jobs in the national economy prior to April 1998.

\* \* \* \* \* \*

Plaintiff filed an application for Social Security disability insurance benefits on December 18, 1995, alleging that she had become disabled and unable to work in May 1992, at age 39, due to mental depression, anxiety and headaches. Benefits were denied, initially and upon reconsideration, by the Social Security Administration.[1] A requested *de novo* hearing was held on February 11, 1998, before Administrative Law Judge Melvyn Kalt who subsequently found that the claimant had retained the residual functional capacity to perform a significant number of light, unskilled, jobs in existence within the national economy prior to March 31, 1998, when her insured status expired. The Appeals Council declined to review that decision and Plaintiff commenced the instant action for judicial review of the denial of benefits.

---

**1.** Plaintiff filed a prior application for disability insurance benefits on January 22, 1993, alleging the same disability as the present application (TR 56–59). Benefits were denied initially and upon reconsideration by the SSA and not pursued further (TR 60–100). Consequently, *res judicata* applies to the determination of Plaintiff's condition compiled through the date of the SSA's reconsideration decision

concerning her prior application (July 30, 1993). *Bagby v. Harris*, 650 F.2d 836 (6th Cir.1981), *cert. denied* 454 U.S. 1087, 102 S.Ct. 647, 70 L.Ed.2d 623 (1981). A federal court may not review the Commissioner's refusal to reopen a previous application absent a constitutional challenge. *Blacha v. Secretary*, 927 F.2d 228, 231–232 (6th Cir.1990).

The parties have filed Motions for Summary Judgment and the issue for review is whether Defendant's denial of benefits was supported by substantial evidence on the record.

Plaintiff was 45 years old at the time her insured status expired, had been graduated from high school, and had been employed by Ford Motors as an assembly worker during the relevant past (TR 56, 81). While on the assembly line, she was required to be on her feet for most of the workday, to constantly bend down and reach over her head, and lift upwards of 10 pounds on a regular basis (TR 82). Claimant stopped working in May 1992 as a result of mental depression and severe pain in her back, legs, ankles and hands (TR 42–44).[2] As a result of her poor health, Plaintiff explained that she suffers from headaches and frequent anxiety attacks (TR 42, 50). Despite her physical and mental problems, however, claimant was still able to go grocery shopping, clean her house, cook for her family, drive an automobile, and socialize with friends and relatives on a regular basis (TR 48–49, 120–123).

A Vocational Expert, Michael Rosko, classified Plaintiff's past work as light, unskilled activity (TR 53). The witness testified that there would be no jobs in existence that claimant could do if her testimony were fully accepted (TR 53),[3] but that if she were capable of light work, there were numerous unskilled assembly, packaging, inspection and sorting jobs that she could have performed with minimum vocational adjustment (TR 54). The Vocational Expert explained that if the claimant could perform work encompassing only a mild amount of stress, a mild degree of concentration, and no more than simple 1–2–3 step operations, she could perform basic industrial processing jobs (TR 53).

The medical evidence revealed that Plaintiff sought professional help in June 1993 for complaints of depression, anxiety, stress, poor sleep and crying spells (TR 179). Treatment notes indicated that the claimant was pleasant, appeared relaxed, was well groomed and had normal manners (TR 181). In addition, she was in contact with reality, was able to speak in a coherent and goal-directed fashion, and could recall three out of three objects after three minutes (TR 182–184). Dr. Gary Pierce, the treating psychiatrist, stated that Plaintiff suffered from dysthymia, and indicated, on numerous physician statements for extended disability benefit forms, that she was unable to work between May 1992 and August 1995 as a result of her depression (TR 185–208).

A psychological assessment by Drs. Leon Ofchus and Samuel Goldstein on December 28, 1995, noted that Plaintiff retained a good ability to follow work rules, use judgment, function independently, and had a very good ability to understand, remember and carry out simple job instructions (TR 214–215). Nevertheless, the psychologists doubted that the claimant could handle the stresses of any form of employment and/or deal appropriately in any social situation in the workplace (TR 212).

Plaintiff also underwent a psychiatric examination by Dr. N. Vera at the request of the Commissioner in May 1996. Following the interview, Dr. Vera reported that the claimant had low self-esteem and poor motivation to work on her problems (TR 217). Plaintiff's speech was spontaneous, clear and coherent, her thoughts were well organized, her memory was intact and she was able to care for her personal needs and perform most household chores and errands (TR 217). Dr. Vora diagnosed major depression and a recurrent

---

2. Plaintiff was receiving nearly $1300.00 dollars a month in disability benefits from her former employer at the time of the hearing (TR 52).

3. The Vocational Expert indicated that Plaintiff's alleged need to lie down for most of the workday would preclude all work activity (TR 53).

anxiety disorder, and gave claimant a GAF score of just 50 indicating a serious impairment in social, occupational and school functioning (TR 219, 224).

Dr. Richard Feldstein, a board certified psychiatrist, interviewed Plaintiff on January 28, 1998, and opined afterwards that she had marked restrictions of daily activities and an extreme impairment as to social functioning (TR 246). While claimant still had good ability to understand, remember and carry out simple job instructions, Dr. Feldstein stated that her depression caused a frequent and repetitive impairment of concentration (TR 246–248). A final report by Dr. Pierce in January 1998, in the form of a completed questionnaire, reiterated that claimant remained disabled as a result of her depression even though she was thought to have only moderate difficulties in maintaining social functioning and moderate restrictions of daily living (TR 250–252).

## LAW JUDGE'S DETERMINATION

The Law Judge found that Plaintiff was impaired as a result of depression, but that this condition was not severe enough to meet or equal the Listing of Impairments. The ALJ recognized that the claimant was limited to light, low stress work activity that did not require much concentration, but found that there were a significant number of such jobs existing in the national economy in March 1998, when her insured status expired, that were identified by the Vocational Expert.

## STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), this court has jurisdiction to review the Commissioner's decisions. Judicial review of those decisions is limited to determining whether his findings are supported by substantial evidence and whether he employed the proper legal standards. *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971). Substantial evi-

dence is more than a scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. See *Kirk v. Secretary*, 667 F.2d 524, 535 (6th Cir.1981), *cert. denied*, 461 U.S. 957, 103 S.Ct. 2428, 77 L.Ed.2d 1315 (1983). This court also does not try the case de novo, or resolve conflicts in the evidence, or decide questions of credibility. See *Brainard v. Secretary*, 889 F.2d 679, 681 (6th Cir.1989); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir.1984).

In determining the existence of substantial evidence, the court must examine the administrative record as a whole. *Kirk*, 667 F.2d at 536. If the Commissioner's decision is supported by substantial evidence, it must be affirmed even if the reviewing court would decide the matter differently, *Kinsella v. Schweiker*, 708 F.2d 1058, 1059 (6th Cir.1983), and even if substantial evidence also supports the opposite conclusion, *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir.1986) (en banc); *Casey v. Secretary*, 987 F.2d 1230 (6th Cir.1993).

In the instant case, Plaintiff did not challenge the Law Judge's finding that her physical impairments were not disabling,[4] but argued, through counsel, that her mental condition was severe enough to prevent her from performing even sedentary work activity. The law is clear, however, that the mere existence of an impairment, even a severe one, will not entitle the claimant to disability benefits unless the impairment prevents her from returning to her previous past work or any other substantial, gainful activity existing in the national economy considering her age, education and work experience. 42 U.S.C. § 423(d)(2)(A), 20 C.F.R. § 404.1505 (1999).

## EVALUATION OF MENTAL IMPAIRMENTS

The evaluation of disability on the basis of mental disorders requires not only the

---

4. While Plaintiff complained of back, leg, ankle, neck and hand pain (TR 42), the medical record was devoid of any objective evidence of any joint disorder or any clinical evidence of functional limitation (TR 228).

documentation of a medically determinable impairment, but a consideration of the degree of limitation such impairment may impose on the individual's ability to work as well. 20 C.F.R. Pt. 404, Subpt. P, App. 1, 12.00(A) (1999). Specifically, a claimant must first establish a psychological impairment listed in one of the eight diagnostic categories of mental disorders found in the Listing of Impairments (Paragraph A criteria). 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.00 A (1999). Secondly, a claimant must establish that her mental impairment causes functional limitations which are inconsistent with the ability to engage in substantial, gainful activity (Paragraph B criteria). The claimant must show restriction in a number of areas, including activities of daily living, social functioning, concentration, persistence and pace, and episodes of deterioration in work or work-like settings. 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.00 C (1999). The degree of limitation must be such as to seriously interfere with the ability to function independently, appropriately and effectively. 20 C.F.R. Pt. 404, Subpt. P, App. 1, 12.00 (1999).

### DISCUSSION AND ANALYSIS

Substantial evidence existed on the record supporting the Commissioner's conclusion that Plaintiff retained the residual functional capacity in March 1998 to perform a significant number of simple, repetitive, unskilled jobs then existing in the national economy identified by the Vocational Expert. Although the Law Judge found the presence of a mental impairment identified in the A criteria (depression § 12.04), the evidence failed to establish significant functional limitation identified in the four categories of the "B" criteria.

The first area, known as "activities of daily living", includes cleaning, shopping, cooking, maintaining a residence, using the telephone and caring for one's grooming and hygiene. 20 C.F.R. Pt. 404, Subpt. P, § 12.00(C)(1). The evidence of record shows that Plaintiff remains capable of performing a variety of daily activities.

Claimant acknowledged that she was able to dress, prepare and eat breakfast, run errands outside the home, perform household chores, go grocery shopping, pay bills and handle financial matters, care for her personal needs, and socialize with friends and family on a regular basis (TR 48–49, 120–123, 131, 133, 144). The undersigned is persuaded that this evidence amply supports the Law Judge's finding that Plaintiff's daily activities are no more than moderately restricted.

Social functioning refers to an individual's capacity to interact appropriately and communicate effectively with others, including family members, friends, and merchants. 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.00(C)(2). Despite her alleged aversion to other people, the claimant was able to go shopping, run necessary errands, attend church once a week, and maintain her treatment schedule without any reported difficulties (TR 48–49, 120–123). While there is some evidence of social impairment in the instant case, other factors mitigate against a completely disabling condition. For instance, Plaintiff has good relationships with her children and mother, she enjoys talking to her friends on a daily basis, and remained pleasant, relaxed and cooperative during her many psychological interviews (TR 144, 180, 217). Given this evidence, the Law Judge reasonably determined that claimant's social functioning was, at most, moderately restricted.

The third area of function evaluated under the "B" criteria is concentration, persistence, and pace, which refers to the "ability to sustain focused attention sufficiently long to permit the timely completion of tasks commonly found in work settings." 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.00(C)(3). Psychiatric evaluations of record found that Plaintiff was in contact with reality (TR 184, 244), was able to speak in coherent and goal-directed fashion (TR 184, 244), and could recall three out of three objects after three minutes (TR 183). In addition, Dr. Feldstein con-

cluded that Plaintiff had a good ability to understand, remember, and carry out simple job instructions (TR 248). Moreover, the claimant's ability to drive (TR 131) and watch her children (TR 142) suggest that she retained at least a minimal level of concentration as would be required for performing the simple one, two and three step operational jobs identified by the Vocational Expert.

The last area of function under the "B" criteria is deterioration or decompensation in work or work-like settings, which refers to the "repeated failure to adapt to stressful circumstances which cause the individual either to withdraw from that situation or to experience exacerbation of signs or symptoms." 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.00(C)(4). The record is devoid of suicide attempts or hospitalizations for a mental disorder. Despite allegations of frequent anxiety attacks, the treating physician never reported actually seeing one. Moreover, the claimant repeatedly stated that her medication helped with her depression (TR 216, 221). The Law Judge took into consideration claimant's inability to handle a lot of stress by insisting that the Vocational Expert identify low-stress jobs that did not require much concentration to perform (TR 53). Consequently, the Law Judge properly found that the degree of limitation for each of the four B criteria was only moderate, not severe, and that Plaintiff failed to carry her burden of establishing that her mental disorder was disabling during the relevant period. As a result, Plaintiff did not meet the requirements of Section 12.04 of the Listing of Impairments.

 While Plaintiff relies heavily on the physician statement forms submitted by Dr. Pierce to her former employer's insurance carrier between May 1992 and August 1995 stating that she was totally disabled due to dysthymia [5] (TR 185–208), the Law Judge properly did not give the opinion controlling weight since it was not supported by objective evidence or clinical findings. The most recent psychological assessment of Dr. Pierce, performed in January 1998, was not necessarily inconsistent with the Law Judge's findings regarding Plaintiff's ability to work. For example, Dr. Pierce found that the claimant had only moderate limitations of daily activities and moderate difficulty in social functioning (TR 250–251). Given the objective clinical findings of the examining physicians of record demonstrating only a moderate level of limitation, and notwithstanding their conclusions as to Plaintiff's employability, the Law Judge could reasonably find that Plaintiff's mental impairment did not prevent her from performing a significant number of simple, repetitive unskilled jobs existing in the national economy that were identified by the Vocational Expert.

 It is the rare case, the exception, in which every piece of evidence points incontrovertibly toward a decision to deny benefits. There was evidence in the record which, taken in isolation, might suggest that the Plaintiff was totally disabled and that her testimony was fully credible. However, special deference is owed to the credibility finding of the ALJ who was the only one who had the opportunity to observe the demeanor of the witness, evaluate what was said in light of how it was said, and to consider how that testimony fit in with the rest of the medical evidence. Such observation is invaluable and should not be discarded lightly. *Beavers v. Secretary,* 577 F.2d 383 (6th Cir.1978). See also

---

**5.** The Sixth Circuit has determined that a claimant must do more to establish a disabling mental impairment than merely show the presence of a dysthymic disorder. *Foster v. Bowen,* 853 F.2d 483, 489 (6th Cir.1988). A dysthymic disorder, which is a chronic disturbance of mood involving either depressed mood or loss of interest in all, or almost all, usual activities and pastimes, but is not of sufficient severity and duration to meet the criteria for a major depressive episode, does not constitute objective evidence of disabling pain caused by a psychological disorder. *Young v. Secretary,* 925 F.2d 146, 151 (6th Cir.1990).

*Williamson v. Secretary,* 796 F.2d 146, 150 (6th Cir.1986).

In sum, the Commissioner's decision to deny benefits was within the range of discretion allowed by law and there is simply insufficient evidence for the undersigned to find otherwise. Accordingly, Plaintiff's Motion for Summary Judgment should be denied, that of Defendant granted, and the instant Complaint dismissed.

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within ten (10) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1). Failure to file specific objections constitutes a waiver of any further right of appeal. *United States v. Walters,* 638 F.2d 947 (6th Cir.1981), *Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985), *Howard v. Secretary of HHS,* 932 F.2d 505 (6th Cir.1991). Filing of objections which raise some issues but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation. *Smith v. Detroit Fed'n of Teachers Local 231,* 829 F.2d 1370, 1373 (6th Cir.1987), *Willis v. Sullivan,* 931 F.2d 390, 401 (6th Cir.1991). Pursuant to Rule 72.1(d)(2) of the *Local Rules of the United States District Court for the Eastern District of Michigan,* a copy of any objections is to be served upon this Magistrate Judge.

Within ten (10) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be not more than five (5) pages in length unless by motion and order such page limits are extended by the Court. The response shall address specifically, and in the same order raised, each issue contained within the objections.

Oct. 21, 1999.