Angela GOODWATER, Plaintiff,

v.

Jo Anne B. BARNHART, Commissioner of Social Security Administration, Defendant.

No. 0:05–3480–JFA–BM.

United States District Court,
D. South Carolina,
Rock Hill Division.

March 30, 2007.

Beatrice E. Whitten, Beatrice E. Whitten Law Office, Mt. Pleasant, SC, for Plaintiff.

Robert F. Daley, Jr., U.S. Attorneys Office, Columbia, SC, for Defendant.

## ORDER

JOSEPH F. ANDERSON, JR., District Judge.

This matter is before the court for review of the Magistrate Judge's Report and Recommendation ("Report") made in accordance with 28 U.S.C. § 636(b)(1)(B) and Local Rule 83.VII.02.

The Magistrate Judge makes only a recommendation to this court. The recommendation has no presumptive weight, and the responsibility to make a final determination remains with the court. *Mathews v. Weber*, 423 U.S. 261, 96 S.Ct. 549, 46 L.Ed.2d 483 (1976). The court is charged with making a *de novo* determination of those portions of the Report and Recommendation to which specific objection is made, and the court may accept, reject, or modify, in whole or in part, the Recommendation of the Magistrate Judge, or recommit the matter to him with instructions. 28 U.S.C. § 636(b)(1),

The plaintiff, Angela Goodwater, brings this action pursuant to Section 205(g) of the Social Security Act, as amended, 42 U.S.C. § 405(g), to obtain judicial review of a final decision of the Commissioner of Social Security (the "Commissioner") de-

nying her claims for continued disability benefits after January 1999.

## I. *Procedural History*

The plaintiff applied for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI) on October 26, 1993, alleging disability since May 5, 1993, from systemic lupus, seizures, depression, joint pain, and memory, concentration, and vision problems. Her claim was denied initially and on reconsideration. On August 27, 1994, the Administrative Law Judge (ALJ) determined that plaintiff was disabled and entitled to benefits commencing May 5, 1993 due to a combination of "severe impairments for systemic lupus erythematosus, with positive ANA results and central nervous system involvement and seizures."

Following a continuing disability review, the plaintiff was notified on January 15, 1999 that due to medical improvement she was no longer disabled, effective January 1999, and that that her benefits would cease in March 1999. Plaintiff requested a disability hearing before a Hearing Officer (HO). The hearing was held on May 5, 1999, and the HO issued a decision on May 17, 1999 that plaintiff was no longer disabled because there had been medical improvement in plaintiffs impairments. The HO determined that plaintiff had the residual functional capacity to engage in a full range of sedentary work.

Plaintiff thereafter filed a request for a hearing before an ALJ, which was held on November 9, 1999. The ALJ issued a decision on February 1, 2001 concluding that as of January 1999 plaintiff was no longer disabled due to medical improvement and that plaintiff had the capacity to engage in a wide range of sedentary work. On November 16, 2001, the Appeals Council vacated the ALJ's decision and remanded the case to the ALJ for further proceedings.

A subsequent administrative hearing was held on June 25, 2002. The ALJ again concluded in a decision on February 24, 2003 that there had been medical improvement in plaintiff's condition and that disability had ceased in January 1999. The ALJ reduced plaintiff's residual functional capacity to a range of unskilled, low stress, sedentary work. Upon denial by the Appeal's Council on October 28, 2005 of the plaintiff's request for review of the ALJ's February 24, 2003 decision, the ALJ's decision became the final decision of the Commissioner. Plaintiff thereafter filed this action in the United States District Court for the District of South Carolina pursuant to 42 U.S.C. § 405(g) seeking judicial review of the final decision of the Commissioner.

The United States Magistrate Judge to whom this matter was referred filed a comprehensive Report on December 12, 2006. The Magistrate Judge recommended that the Commissioner's decision be affirmed.

The parties were advised of their right to file specific written objections to the Magistrate's Report. The plaintiff filed her objections on December 18, 2006. The Commissioner has not responded to those objections; however, the matter now appears ripe for review.

## II. *Standard of Review*

The role of the federal judiciary in the administrative scheme established by the Social Security Act is a limited one. The Social Security Act, 42 U.S.C. §§ 405(g), 1383(c)(3), limits this Court's review of a final decision of the Commissioner to (1) whether substantial evidence supports the Commissioner's findings and (2) whether the findings were reached through application of the correct legal standard. *Craig v. Chater,* 76 F.3d 585, 589 (1996) (citing *Coffman v. Bowen,* 829 F.2d 514, 517 (4th

Cir.1987)). Substantial evidence is " 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion,' " *Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971) (quoting *Consolidated Edison Co. v. NLRB,* 305 U.S. 197, 229, 59 S.Ct. 206, 83 L.Ed. 126 (1938)); it is "more than a scintilla, but less than a preponderance." *Thomas v. Celebrezze,* 331 F.2d 541, 543 (4th Cir.1964). This standard precludes a *de novo* review of the factual circumstances that substitutes the court's findings for those of the Commissioner. *Vitek v. Finch,* 438 F.2d 1157, 1157 (4th Cir. 1971). "[T]he court [must] uphold the [Commissioner's] decision even should the court disagree with such decision as long as it is supported by 'substantial evidence.' " *Blalock v. Richardson,* 483 F.2d 773, 775 (4th Cir.1972) (citation omitted).

"From this it does not follow, however, that the findings of the administrative agency are to be mechanically accepted. The statutorily granted right of review contemplates more than an uncritical rubber stamping of the administrative action." *Flack v. Cohen,* 413 F.2d 278, 279 (4th Cir.1969). "[T]he courts must not abdicate their responsibility to give careful scrutiny to the whole record to assure that there is a sound foundation for the [Commissioner's] findings, and that his conclusion is rational." *Vitek,* 438 F.2d at 1157–58.

## III. *Discussion*

### A. *Applicable Law*

An individual is disabled if she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 416(i)(1); § 1382c(a)(3)(A). In general, the law requires the Commissioner to conduct continuing disability reviews to determine whether recipients of disability benefits continue to meet the eligibility requirements for disability benefits. 42 U.S.C. § 421(i)($l$) (all disability beneficiaries); § 1382c(a)(3)(H) (specific SSI disability recipients). Subject to specific exceptions, disability benefits will cease only if there has been (1) any medical improvement in the individual's impairment or combination of impairments that is related to the ability to work, and (2) the individual is able to engage in substantial gainful activity. 42 U.S.C. § 423(f)(1)(A); § 1382c(a)(4)(A)(i).

"Medical improvement is any decrease in the medical severity of ... impairment(s) which was present at the time of the most recent favorable medical decision that [an individual was] disabled or continued to be disabled." 20 C.F.R. § 404.1594(b)(1); 20 C.F.R. § 416.994(b)($l$)(i). A decrease in medical severity of an impairment(s) must be based on an improvement in signs, symptoms, or laboratory findings. § 404.1594(b)(1); § 416.994(b)(1)(i). If an increase in residual functional capacity (i.e., functional capacity to do basic work activities) based on previously existing impairments accompanies a decrease in medical severity, the medical improvement is related to the ability to work. § 404.1594(c)(2); § 416.994(b)($l$)(iii). In addition, medical improvement will be found to be related to work where the severity of an impairment(s) no longer meets or equals the same listing relied upon in the most recent favorable decision. § 404.1594(c)(3)(i); § 416.994(b)(2)(iv)(A).

Even if there is medical improvement, disability will not be found to have ended unless (1) an individual does not have a current impairment or combination of impairments that is severe or (2) an individual with severe impairment(s) is able to engage in substantial gainful activity.

§ 404.1594(b)(3), (f)(6); § 416.994(b)(1)(iii), (5)(v). An impairment or combination of impairments is severe if it significantly limits an individual's physical or mental ability to do basic work activities (e.g., sitting, standing, seeing, understanding). § 404.1521(a)-(b); § 416.921(a)-(b). If an individual is not precluded from engaging in substantial gainful activity on the basis of medical considerations alone, an individual's residual functional capacity based on current impairments is used to determine whether an individual is able to engage in substantial gainful activity. § 404.1594(b)(5); § 416.994(b)(*l* )(v). An individual will be found to have the ability to engage in substantial gainful activity if: (1) considering residual functional capacity, the individual is able to perform past relevant work or (2) considering residual functional capacity and vocational factors (such as age, education, and past work experience), the individual can perform other work that exists in significant numbers in the national economy. §§ 404.1594(f)(7)-(8), .1560(c); §§ 416.994(b)(5)(vi)-(vii), .960(c).

### B. *ALJ's Findings*

On February 24, 2003, the ALJ made the following findings of fact:

1. The claimant was found to be disabled within the meaning of the Social Security Act, beginning May 5, 1993, due to epilepsy.

2. The claimant has an impairment, seizure disorder, which is "severe" within the meaning of the Social Security Act; however, the condition does not meet or medically equal one of the listed impairments in Appendix 1, Subpart P, Regulations No. 4.

3. The claimant's allegations regarding her limitations are not entirely credible for the reasons set forth in the body of the decision.

4. The evidence establishes that there has been medical improvement in the claimant's condition since August 27, 1994, the comparison point decision, which is related to her ability to work.

5. The ALJ carefully considered all of the medical opinions in the record regarding the severity of the claimant's impairments (20 CFR §§ 404.1527 and 416.927).

6. Commencing January 1, 1999, the claimant had the residual functional capacity to lift up to 10 pounds in a job with low stress.

7. The claimant's work as nursing assistant require lifting in excess of 10 pounds; therefore, she could not return to past relevant work (20 CFR §§ 404.1565 and 416.965).

8. The claimant has the residual functional capacity to perform a significant range of sedentary work (20 CFR § 416.967).

9. Although the claimant's exertional limitations do not allow her to perform the full range of sedentary work, using Medical–Vocational Rule 201.21 as a framework for decision-making, there are a significant number of jobs in the national economy that she could perform. Examples of such jobs include work as surveillance systems monitor (1500 in SC and 100,000 in US), cashier (600,000 in SC and 3 million in US).

10. The claimant's disability ceased on January 1, 1999 (20 CFR §§ 404.1520(f) and 416.920(f)).

The plaintiff argues that her disability benefits were erroneously terminated as a result of the ALJ's failure to:

1. Scrupulously and conscientiously explore all of the relevant facts when

plaintiff was unrepresented by counsel;

2. Properly consider new evidence;

3. Reconcile the fact that the state agency medical opinions upon which he relied considered only plaintiff's seizure disorder in determining her residual functional capacity and did not consider her additional impairments of systemic lupus erythematosus, fibromyalgia, headaches, diabetes mellitus with resulting neuropathy and pain;

4. Give weight to witness testimony and conduct a proper credibility analysis; and

5. Properly consider the effects of plaintiff's numerous medications upon her ability to perform sustained work on a regular and continuous basis.

### C. *Magistrate's Report & Recommendation*

The Magistrate Judge concluded that substantial evidence supported the ALJ's determination that plaintiff was not disabled as of January 1999 and that the ALJ applied the correct legal standards. The Magistrate Judge, therefore, recommends that the Commissioner's decision be affirmed.

### D. *Plaintiff's Objections to Magistrate's Report*

Plaintiff appears to make six objections to the Magistrate's Report. Each of these objections is discussed in turn.

1. Plaintiff claims the Magistrate Judge erred in failing to consider plaintiff's subsequent determination of disability which constituted new and material evidence and required remand.

As noted above, the ALJ issued a decision on February 24, 2003 that plaintiff was no longer disabled effective January 1999, the date of the initial cessation determination. On November 15, 2004, the same ALJ found that the plaintiff had been disabled since February 25, 2003. On October 28, 2005, the Appeals Council denied review of the ALJ's February 24, 2003 decision—the decision before this Court. The Appeals Council's denial of review notice provided:

> In taking our action, we are aware that you were found to be entitled to a new period of disability beginning February 25, 2003, in a hearing decision dated November 15, 2004 from another [ALJ]. We do not necessarily agree with the finding of disability in the new hearing decision. However, we concluded that there is no basis under the applicable regulations to reopen this later decision.

After reviewing the evidence, the Magistrate Judge concluded that substantial evidence supported the ALJ's finding of medical improvement which was related to plaintiff's ability to work, and that, as of January 1999, plaintiff had the residual functional capacity to perform sedentary work reduced to a range of unskilled work in a low stress environment. The Magistrate Judge found that the ALJ had not failed to properly consider new evidence because the point of time for assessing plaintiff's condition was January 1999. The plaintiff argues that the subsequent determination of disability constituted new and material evidence that required remand. More specifically, the plaintiff argues that the ALJ's subsequent finding of disability is relevant to the initial determination of cessation when based on the same medical records and facts. The plaintiff asserts that because the subsequent onset date of disability came in close proximity to the earlier denial, that the evidence is new and material and requires remand.

■ Plaintiff's arguments are without merit. First, the Magistrate Judge did not err by finding that the ALJ must consider plaintiff's conditions at the time of the initial cessation determination. Disability determinations must be made based on "all the evidence available in the individual's case file, including new evidence concerning the individual's prior or *current* condition." 42 U.S.C. § 423(f)(4); § 1382c(a)(4)(ii) (emphasis provided). Although the Fourth Circuit has not directly ruled on the meaning of "current" in the context of disability cessation determinations,[1] the Social Security Administration (SSA) interprets "current" as relating to the claimant's condition at the initial determination of cessation, not the ALJ's hearing or reconsideration determination:

> In making any initial determination that a claimant's disability has ceased, SSA considers the claimant's condition at the time SSA is making the initial determination. In deciding the appeal of that cessation determination, the Secretary considers what the claimant's condition was at the time of the cessation determination, not the claimant's condition at the time of the disability hearing/reconsideration determination, ALJ decision or Appeals Council decision. However, if the evidence indicates that the claimant's condition may have again become disabling subsequent to the cessation of his or her disability or that he or she has a new impairment, the adjudicator solicits a new application.

Social Security Acquiescence Ruling 92–2(6) (March 17, 1992). As this issue has not been decided by the Fourth Circuit, the court defers to the SSA's interpretation, and finds that the Magistrate Judge

did not err in evaluating plaintiff's condition at the time of the initial cessation determination in January 1999.

Plaintiff's argument for remand of new and material evidence likewise fails. A court may remand a case to the Commissioner pursuant to 42 U.S.C. § 405(g), "only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding." In determining whether to grant review, Social Security regulations require the Appeals Council to consider (1) new and (2) material evidence (3) "where it relates to the period on or before the date of the administrative law judge hearing decision." 20 C.F.R. § 404.970; *Wilkins v. Secretary of Dep't of Health & Human Servs.*, 953 F.2d 93, 95 (4th Cir.1991). "Evidence is new ... if it is not duplicative or cumulative. Evidence is material if there is a reasonable possibility that the new evidence would have changed the outcome." *Id.* at 96.

Plaintiff argues that the subsequent finding of disability commencing February 25, 2003 is new and material to the ALJ's decision on February 24, 2003 which found that plaintiff was not disabled on January 1999. Plaintiff asserts that the finding of disability commencing February 25, 2003 constitutes new and material evidence because the determinations were made in close proximity and based upon the same records and evidence.

The plaintiff relies on *Bradley v. Barnhart*, 463 F.Supp.2d 577 (S.D.W.Va.2006), in arguing that an onset date in close proximity with a previous denial consti-

---

1. In an unpublished opinion, *Lever v. Barnhart*, 77 Fed.Appx. 178, 2003 WL 22301081 (4th Cir.2003), aff'g CA–01–3246 (D.S.C. 2002), the Fourth Circuit affirmed a decision by this court that rejected the holding of *Difford v. Secretary of Health & Human Services*,

910 F.2d 1316, 1319–20 (6th Cir.1990). Difford held that adjudication of disability must occur through the time of the ALJ's hearing. *Id.* However, this Court adhered to the SSA's interpretation of "current" as referring to time of the cessation determination.

tutes new and material evidence. Contrary to plaintiff's interpretation, the *Bradley* court did not hold that close onset and denial dates require remand. The court interpreted a prior case, *Reichard v. Barnhart*, 285 F.Supp.2d 728 (S.D.W.Va. 2003), as standing "for the proposition that an award based on an onset date coming in immediate proximity to an earlier denial of benefits is worthier of further administrative scrutiny to determine whether the favorable event should alter the initial, negative outcome of the claim." 463 F.Supp.2d at 581. The court then applied the *Wilkins* standard for new and material evidence in deciding whether to remand. *Id.* This court rejects plaintiff's suggestion that close proximity requires remand. Furthermore, the court finds Bradley distinguishable as well on the facts because it involved an individual whose initial application for disability had been denied—not the termination of disability benefits. *Id.* at 578–79. Additionally, as noted above, in the instant case, the Appeal's Council reviewed the subsequent favorable determination and found that it did not warrant a review of the prior denial; whereas, there apparently was no such similar review in *Bradley*.

The plaintiff also appears to argue that the ALJ's subsequent favorable determination is new and material because it is based on the same records as the prior decision upholding termination of benefits. However, this argument mischaracterizes the ALJ's findings. The ALJ's February 24, 2003 cessation determination reveals that the ALJ evaluated all of the evidence, including the evidence after the date of initial determination, in evaluating the plaintiff's conditions that existed at the time of the initial cessation determination on January 1999; however, in finding that the plaintiff was no longer disabled, the ALJ noted that the "new evidence" submitted by the plaintiff did not support a finding of deterioration of these conditions.

On the other hand, the ALJ's subsequent finding of disability on November 15, 2004 was based in part on new conditions that developed after January 1999 (e.g., diabetes in November of 2000, early signs of peripheral neuropathy in March 2001, mild degenerative disc disease in December 2001) and "in particular, [on] the persuasive" reports made by two physicians in 2003 and 2004 that asserted plaintiff's disability. Thus, contrary to plaintiffs assertions, the "same evidence" does not support a finding of disability at the relevant point in time, January 1999. A review of the medical reports provides substantial evidence supporting the ALJ's finding that the new evidence submitted by the plaintiff did not show a deterioration of plaintiff's conditions that existed on and before January 1999.

After a review of the record, the court finds that substantial evidence supports the Appeals Council's decision not to review the ALJ's February 24, 2003 decision. Because the subsequent finding of disability was based upon evidence of plaintiff's impairments after the relevant point in time and there is nothing in the evidence relating to plaintiff's impairments before January 1999, there, is no "reasonable possibility" that the subsequent favorable determination would have resulted in a different outcome. Therefore, the court finds that the subsequent determination of disability was not material and as such does not require remand.

1. Plaintiff claims the Magistrate Judge erred in failing to find that the ALJ did not "scrupulously and conscientiously" explore all relevant facts where plaintiff proceeded pro se and that the hearing was conducted in an unfair manner.

█ A disability claimant is entitled to a full and fair hearing. *Sims v. Harris,*

631 F.2d 26, 27 (4th Cir.1980). Good cause sufficient to remand under 42 U.S.C. § 405(g) may exist if a claimant is not provided a full and fair hearing. *Id.* However, absence of counsel does "not by itself [indicate] that a hearing was not full and fair"; remand is proper where lack of representation results in "clear prejudice or unfairness" to the claimant. *Id.* at 27–28. In *pro se* cases, an ALJ has a duty to "'scrupulously and conscientiously ... probe into, inquire of, and explore for all the relevant facts.'" *Walker v. Harris,* 642 F.2d 712, 714 (4th Cir.1981) (quoting *Gold v. Secretary of HEW,* 463 F.2d 38, 43 (2d Cir.1972)). An ALJ's failure to fulfill this duty to pro se claimants may result in remand where the absence of counsel results in prejudice to the claimant. *Id.*

The Magistrate Judge concluded that the hearing was fair and that the ALJ fulfilled the heightened duty because the ALJ advised the plaintiff of her right to obtain counsel, offered to reschedule the hearing, took testimony, and provided plaintiff the opportunity to question a vocational expert. The Magistrate Judge rejected, as "mere speculation," the plaintiff's argument that the hearing would have been handled differently if plaintiff had been represented by counsel. The plaintiff argues that the only difference between the prior hearings, resulting in unfavorable determinations, and the most recent hearing, resulting in a favorable determination, was the fact that plaintiff was represented by counsel: "The very same ALJ, used the very same evidence, to determine that the very same claimant was actually disabled as of one day after the date he issued his prior decision in which he determined that she was 'not disabled.'"

■ Plaintiff's argument is without merit. The evidence supports the Magistrate Judge's conclusion that the hearing was not unfair or prejudicial to the plaintiff.

In addition to the Magistrate Judge's findings above, the hearing transcript provides further support that the ALJ fulfilled the duty to inquire of and explore all relevant facts. For example, the ALJ prompted the plaintiff's husband to testify, focused the plaintiff's testimony on relevant matters, inquired into plaintiff's former job duties and the reasons plaintiff stopped working, assisted plaintiff in asking the vocational expert a hypothetical question, and sought clarification of the plaintiff's proposed limitation due to medication side effects. Therefore, the court finds that the ALJ fulfilled the heightened duty required when a claimant appears without counsel.

Plaintiff's argument that the outcome of the hearing was different solely because of lack of counsel is likewise without merit. First, plaintiff's argument ignores the relevant time period for a cessation determination. As noted above, the relevant evidence is that evidence which relates to the time before the hearing and is material to the plaintiff's current condition, that is, plaintiff's condition at the time of the initial cessation determination. The plaintiff's subsequent favorable disability determination, by the same ALJ, was based at least in part upon evidence that showed plaintiff had developed new conditions subsequent to termination. Therefore, the court finds that the evidence does not support the conclusion that the absence of counsel, which alone is insufficient to establish prejudice, was the outcome-determinate variable.

2. Plaintiff claims the Magistrate Judge erred in finding the ALJ properly evaluated plaintiff's subjective complaints.

■ In assessing complaints of pain and other symptoms, the ALJ must first determine whether there is objective medi-

cal evidence showing the existence of a medical impairment which could reasonably be expected to produce the actual pain or other symptoms, in the amount and degree, alleged by the claimant. *Craig v. Chater,* 76 F.3d 585, 591, 594 (4th Cir.1996). If there is such evidence, the ALJ must then consider the plaintiff's subjective complaints along with all of the evidence in the record. *Id.* Although subjective complaints of pain and other symptoms may not be discredited solely because they are not substantiated by objective evidence, "they need not be accepted to the extent they are inconsistent with the available evidence, including objective evidence of the underlying impairment, and the extent to which that impairment can reasonably be expected to cause" the pain or symptom. *Id.* at 595.

The plaintiff testified at the hearing on June 25, 2002 that she suffered from "a lot of pain" during the relevant point in time and that she was unable to complete tasks at home. During the proceeding before the HO on May 5, 1999, plaintiff testified that she suffered from fatigue and that she became "completely" tired by "any activity." She also testified that she had ongoing pain "in all muscle groups and joints"; experienced severe headaches once or twice per week that lasted three days on average; could not "do things she did in the past" because of depression; and had "difficulty with her memory at times particularly with remembering people's names." Plaintiff's husband testified at the hearing on June 25, 2002 that plaintiff had to stop work because of pain, and that her medication caused her to be inattentive most of the time.

After discussing the status of each of the plaintiff's mental and physical impairments as of January 1999 (i.e., seizure disorder, lupus, fibromyalgia, headaches, depression, and I.Q. score of 80), the ALJ concluded that contrary to the testimony of plaintiff and her husband, the medical evidence failed to "show severe symptoms of any condition which would prevent the minimal exertion required be sedentary work." The ALJ noted that plaintiff testified that she had experienced no seizures since August 1998; suffered from severe and chronic pain; was unable to perform daily activities; and suffered from severe depression, fatigue, and poor memory. He found, however, that the severity of plaintiff's alleged symptoms were not entirely credible. The ALJ noted that the medical evidence did not support plaintiff's alleged limitations due to depression, fatigue, and poor memory; that Prozac had been prescribed for depression; the lack of emergency treatment for seizure activity or severe headaches; plaintiff's denial of seizure activity since 1998 (which was attributed to plaintiff's failure to take medication); that no physician stated that she could not work due to any physical or mental condition or that her seizure disorder significantly limited her ability to work; and that plaintiff's neurologist had reported that claimant was doing well and denied seizure activity since 1998. The ALJ also noted that the opinions of the state agency physicians supported his findings. Thus, the ALJ found that the plaintiff had the residual functional capacity to perform unskilled, low stress, sedentary work.

Plaintiff asserts that the ALJ failed to perform a proper credibility analysis of the plaintiff's subjective symptoms. The Magistrate Judge found that substantial evidence supported the ALJ's findings that plaintiff's conditions did not prevent the plaintiff from engaging in unskilled, low stress, sedentary work and thus concluded that there was no reversible error in the ALJ's findings.

Plaintiff first argues that the Magistrate erred in finding that the ALJ performed a

proper credibility analysis. Plaintiff asserts that the Magistrate inappropriately engaged in a post hoc rationalization of the ALJ's assessment. The court rejects plaintiff's argument.

█ First, the objective medical evidence suggests that the plaintiff suffered from a seizure disorder, lupus, fibromyalgia, depression, lower than average I.Q., and headaches. The ALJ's decision clearly identifies and discusses the status of each of these impairments.[2]

█ Second, while lupus, fibromyalgia, headaches, and depression could reasonably cause the symptoms alleged by the plaintiff, substantial evidence supports the ALJ's determination that they did not cause symptoms of the severity alleged by the plaintiff. The ALJ specifically noted inconsistency between the testimony and medical evidence: "[T]he medical evidence fails to show severe symptoms of any condition which would prevent the minimal physical exertion required by sedentary work." Medical evidence may be considered in assessing the extent and severity of symptoms caused by plaintiff's impairments. *Craig v. Chater*, 76 F.3d 585, 591, 595 (4th Cir.1996) (The ALJ must evaluate "not only the claimant's subjective statements about her pain, but also 'all the available evidence' . . . .").

The medical evidence cited by the ALJ included references to evaluations made by the plaintiff's neurologist and state agency physicians. The evaluation dated September 16, 1998 by plaintiff's neurologist, Dr. Plyler, supports the ALJ's reference to the physician's finding that plaintiff was "doing well" and reported no seizures. Specifically, Dr. Plyler's evaluation stated that plaintiff reported tolerating medication change well; no recurrence of seizures since the seizure in 1998 (plaintiff admitted she may have missed one or two doses of medication at the time of that seizure); fewer headaches; no other complaints other than personal stresses and some sleep difficulty; and that her lupus was currently stable. The ALJ also noted that the opinions of the state agency physicians supported his findings. The RFC assessment by Dr. Baker, a state agency physician, listed seizures and lupus as plaintiff's primary and secondary diagnoses. The RFC assessment indicated that plaintiff had no exertional limitations and that she should avoid all exposure to hazards and not climb ladders, ropes, or scaffolds due to her well-controlled seizure disorder. The report dated April 1, 1999 by Dr. Weymonth, another state agency physician, listed seizures as the primary diagnosis and concluded that plaintiff had no exertional limitations but should avoided concentrated exposure to hazards.

In addition, the ALJ noted that no physician had indicated that plaintiff's physical or mental functions prevented her from work. While not specifically referencing the reports at this point in the decision, the ALJ had discussed numerous medical reports earlier in the decision that indicated that the plaintiff had no recurrence of seizures, stable lupus with muscle aches and joint pain but no systemic involvement, improvement in myalgias, no active joint inflammation, cessation of chest pain, treatment of depression with Prozac, and no limitations in remembering short, simple instructions and slight difficulty in interacting appropriately in interacting ap-

---

**2.** The Court notes that while the ALJ did not explicitly state that these conditions could reasonably cause the symptoms alleged by the plaintiff, any error is harmless because substantial evidence supports the ALJ's finding that they did not cause symptoms of the sever-

ity alleged. *Mickles v. Shalala*, 29 F.3d 918, 921 (4th Cir.1994) (affirming ALJ's decision to deny benefits where the result would have been the same despite the initial error in evaluating plaintiff's pain).

propriately with the public, supervisors, and co-workers.

The ALJ was entitled to rely upon inconsistencies between the medical evidence and plaintiff's alleged severity of symptoms in assessing the extent and severity of plaintiff's subjective complaints. *Craig v. Chater*, 76 F.3d 585, 591, 595 (4th Cir. 1996) (quoting 20 C.F.R. §§ 404.1529(c)(4), 416.929(c)) (The ALJ should "consider whether there are any inconsistencies in the evidence and the extent to which there are any conflicts between [plaintiff's] statements and the rest of the evidence, including ... statements by [plaintiff's] treating or examining physician or psychologist or other persons about how" the symptoms affect the plaintiff.). It is notable that in evaluating plaintiffs subjective complaints, the ALJ did not entirely discount plaintiff's allegations. The ALJ noted that no physician, including treating and state agency physicians, asserted that plaintiff had any exertional limitations due to any mental or physical condition; however, the ALJ concluded that plaintiff's conditions did not preclude her from performing requirements of sedentary work. The ALJ did not entirely discredit plaintiff's symptoms, but concluded that the medical evidence did not support plaintiff's claims as to the severity of the symptoms.

After a review of the record, the court finds the Magistrate did not err in finding that the ALJ's credibility analysis did not require reversal. This Court may properly review a credibility decision to determine whether it is supported by substantial evidence. *Johnson v. Barnhart*, 434 F.3d 650, 659 (4th Cir.2005). The Magistrate Judge did not err in finding that substantial evidence supports the ALJ's determination that plaintiff's allegations of subjective symptoms were not entirely credible. Therefore, the court finds that the ALJ's failure to explicitly mention that plaintiff's conditions could cause her symptoms was harmless error and does not require reversal. *Ngarurih v. Ashcroft*, 371 F.3d 182, 190 n. 8 (4th Cir.2004) ("While the general rule is that an administrative order cannot be upheld unless the grounds upon which the agency acted in exercising its powers were those upon which its action can be sustained, reversal is not required when the alleged error clearly had no bearing on the procedure used or the substance of the decision reached.") (citations and internal quotation marks omitted).

3. Plaintiff claims the Magistrate Judge erred in finding that the ALJ's failure to consider the side effects of medications did not require reversal.

Plaintiff's husband testified at the hearing before the ALJ that plaintiff's medications "have her all pulling from one place to another." He also testified, in the form of a hypothetical posed to the vocational expert, that plaintiff was inattentive for most of the time. The vocational expert responded that all of the jobs listed at the hearing would require concentration and attentiveness throughout the workday. Without specifically mentioning "side effects," the ALJ concluded that the medical evidence was inconsistent with the testimony of both the plaintiff and her husband. Plaintiff argues that the ALJ's failure to specifically mention the side effects of plaintiff's medications constituted reversible error because the Commissioner failed to meet his burden in establishing a significant number of jobs in the economy that a person with plaintiff's limitations could perform. Plaintiff's argument is without merit.

Although the ALJ did not specifically reference the negative side effects of plaintiff's medications, the ALJ did mention how medications improved or controlled

plaintiff's impairments. Furthermore, the ALJ noted that no physician had concluded that plaintiff's conditions prevented her from working and specifically referenced Dr. Plyler's report, dated September 16, 1998, which found that the plaintiff was "doing well." While the ALJ did not specifically mention "side effects" in referring to Dr. Plyler's report, the medical report relied upon by the ALJ noted that plaintiff was tolerating her medications well.

Plaintiff asserts that the medical evidence confirms, not contradicts, the testimony, and she relies upon Dr. Plyler's record, dated May 6, 1998, which stated that plaintiff reported symptoms of nausea, dizziness, sleepiness, and confusion after her primary physician doubled the dosage of one of her medications. However, this argument fails to note that during the same visit the plaintiff stated that "she had been doing well" on her prior medication regime, that she was unsure why the medication dosage had been changed, and that she thought her symptoms had occurred because she ran out of one of her other medications. Dr. Plyler adjusted plaintiff's medication back to the previous regime. In fact, the visit relied upon by the ALJ for the assertion that plaintiff was "doing well" was a follow-up visit to the one cited by plaintiff.

 The ALJ is not required to accept unquestioningly all alleged side effects of medications; complaints of side effects may properly be discredited by inconsistent evidence. *See Johnson v. Barnhart*, 434 F.3d 650, 659 (4th Cir.2005) (relying upon plaintiff's activities to discredit "allegedly disabling 'doped up' effect" of medication). After reviewing the record, the court finds that the Magistrate Judge did not err in concluding that the ALJ's failure to mention side effects did not constitute reversible error. Substantial evidence supports the ALJ's finding that the severity of plaintiff's side effects from

medications did not preclude her from performing sedentary work; therefore, the ALJ's failure to mention the negative side effects of plaintiff's medications was harmless error. *Ngarurih v. Ashcroft*, 371 F.3d 182, 190 n. 8 (4th Cir.2004).

Plaintiff also argues that the Magistrate erred in finding that the ALJ's limitations of unskilled, low stress, work adequately and appropriately accounted for any difficulties plaintiff would have in concentration and pace at work. Because the court finds the ALJ's assessment is supported by substantial evidence, the court need not adopt the Magistrate Judge's conclusion that the ALJ's unskilled and low stress limitations adequately accounted for plaintiff's alleged side effects of medications.

4. Plaintiff claims the Magistrate Judge erred in finding that the ALJ's allegedly deficient hypothetical constituted a harmless error.

In her objections, plaintiff asserted that reversal is warranted because the Commissioner failed to meet his burden in establishing that there are a significant number of jobs in the national community that plaintiff could perform. Specifically, plaintiff argues that the hypothetical question posed to the vocational expert did not reflect her condition because the ALJ failed to include the alleged limitations created by the side effects of her medications. The Magistrate Judge concluded that limiting plaintiff to unskilled, low stress work adequately and appropriately accounted for any difficulties that plaintiff would have in maintaining concentration pace at work.

 "In order for a vocational expert's opinion to be relevant or helpful, it must be based upon a consideration of all other evidence in the record." *Walker v. Bowen*, 889 F.2d 47, 50 (4th Cir.1989). As noted above, there is substantial evidence supporting the ALJ's conclusion that plaintiff's symptoms would not prevent her

from performing sedentary work. As such, the court finds that the ALJ's hypothetical adequately and accurately reflected plaintiff's conditions and that the court need not adopt the Magistrate's conclusion that the ALJ's limitation to unskilled and low stress adequately accounted for plaintiff's alleged limitations due to side effects.

5. Plaintiff claims the Magistrate Judge, like the ALJ, erred in failing to consider the combined effect of plaintiff's impairments.

In determining the effect of impairments upon a plaintiff's ability to work, the ALJ must consider the combined effect of both severe and nonsevere impairments. 20 C.F.R. § 416.945(e). Plaintiff asserts that both the Magistrate Judge and ALJ failed to properly consider the combined effect of plaintiff's impairments in determining whether plaintiff was disabled. Plaintiff's argument is without merit.

■■■ The record reflects that the ALJ considered the effects of each of plaintiff's impairments, both severe and nonsevere. In addition to plaintiff's seizure disorder, the ALJ assessed the effects of plaintiff's depression, I.Q., and subjective complaints upon plaintiff's capacity to work. Furthermore, contrary to plaintiff's argument, one of the two state agency physicians relied upon by the ALJ noted both seizure disorder and lupus as diagnoses. The fact that the physician documented certain limitations due to seizures but did not note limitations due to lupus leads to the logical conclusion that the physician found no limitations due to lupus—not that the physician didn't evaluate the effects of lupus upon plaintiff's functional capacity to work. These findings were not inconsistent with evaluations of other physicians who, as the ALJ noted, never asserted that plaintiff's impairments affected her ability to work.

After reviewing all of the evidence as a whole, the court finds that substantial evidence supports the ALJ's conclusion that plaintiff was not disabled by her impairments at the time of the initial cessation determination in January 1999.

IV. *Conclusion*

After a thorough and careful review of the record, including the findings of the ALJ, the briefs from the plaintiff and the Commissioner, the Magistrate Judge's Report, and the plaintiff's objections thereto, the court find the Magistrate's Report provides an accurate summary of the facts in the instant case. The court adopts the Report of the Magistrate Judge with the exception of the parts noted above and incorporates it herein by reference. For the reasons set out hereinabove and in the Report of the Magistrate Judge, the Commissioner's final decision denying benefits is affirmed.

IT IS SO ORDERED.

## REPORT AND RECOMMENDATION

BRISTOW MARCHANT, United States Magistrate Judge.

The Plaintiff filed the complaint in this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of the final decision of the Commissioner wherein she was denied continued disability benefits after January 1999. This case was referred to the undersigned for a report and recommendation pursuant to Local Rule 73.02(B)(2)(a), (D.S.C.).

Plaintiff applied for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI) on October 26, 1993 due to Lupus and other ailments. (R.p. 73). On August 27, 1994, Plaintiff was found to be entitled to an award of benefits commencing May 5, 1993 due to a combination of Systemic Lupus Erythematosus [1] with pos-

---

1. Systemic Lupus Erythematosus is an "in-

flammatory connective tissue disorder." *See*

itive ANA[2] results, central nervous system involvement, and seizures. (R.pp. 146–154). However, Plaintiff was subsequently notified on January 15, 1999 that, due to medical improvement, she was no longer disabled effective January 1999, and that her benefits would therefore cease in March 1999. (R.pp. 155, 157–159). Plaintiff requested a hearing on this issue before a Hearing Officer (HO), which was held on May 5, 1999. (R.pp. 186–202). The HO thereafter issued a decision on May 17, 1999 in which he found that there had been medical improvement in Plaintiff's impairments such that she now had the residual functional capacity to engage in a full range of sedentary work, and was therefore no longer disabled. (R.pp. 200–205).

Plaintiff then requested a hearing before an administrative law judge (ALJ), which was held on November 9, 1999. (R.pp. 23–33). The ALJ thereafter denied Plaintiff's claims in a decision issued February 1, 2001. (R.pp. 384–391). However, the Appeals Council granted Plaintiff's request for review and remanded the case to the ALJ for further proceedings; (R.pp. 395–399); following which a subsequent administrative hearing was held on June 25, 2002. (R.pp. 34–51). The ALJ then again denied Plaintiff's claims in a decision issued February 24, 2003. (R.pp. 17–22). This time, the Appeals Council denied Plaintiff's request for a review of the ALJ's decision, thereby making the determination of the ALJ the final decision of the Commissioner. (R.pp. 9–11).

The Plaintiff then filed this action in United States District Court. Plaintiff asserts that there is not substantial evidence to support the ALJ's decision, and that the decision should be reversed and remanded for a continuing award of benefits. The Commissioner contends that the decision to deny benefits is supported by substantial evidence, and that the Plaintiff was properly found to no longer be disabled effective January 1999.

### Scope of review

Under 42 U.S.C. § 405(g), the Court's scope of review is limited to (1) whether the Commissioner's decision is supported by substantial evidence, and (2) whether the ultimate conclusions reached by the Commissioner are legally correct under controlling law. *Hays v. Sullivan,* 907 F.2d 1453, 1456 (4th Cir.1990); *Richardson v. Califano,* 574 F.2d 802, 803 (4th Cir.1978); *Myers v. Califano,* 611 F.2d 980, 982–983 (4th Cir.1980). If the record contains substantial evidence to support the Commissioner's decision, it is the court's duty to affirm the decision. Substantial evidence has been defined as:

> evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. **If there is evidence to justify refusal to direct a verdict were the case before a jury, then there is "substantial evidence."**
>
> [emphasis added].

*Hays,* 907 F.2d at 1456 (citing *Laws v. Celebrezze,* 368 F.2d 640 (4th Cir.1966)). The Court lacks the authority to substitute its own judgment for that of the Commis-

---

*Merck Manual of Diagnosis and Treatment* (16th Ed.1992) (Attached), *available on* Teton Viewer: STAT!REF Medical Reference (Spring 2001) CD–ROM.

**2.** Antinuclear antibodies (ANA) is a group of antibodies that react against normal components of the cell nucleus. These antibodies are present in a variety of immunologic diseases, including systemic lupus erythematosus. Tests for ANAs are used in the diagnosis and management of autoimmune diseases. *See Taber's Cyclopedic Medical Dictionary (Taber's)* (20th ed.2005) *available on* Stat!Ref Library CD–ROM (Second Qtr.2006).

sioner. *Laws*, 368 F.2d at 642. "[T]he language of [405(g)] precludes a de novo judicial proceeding and requires that the court uphold the [Commissioner's] decision even should the court disagree with such decision as long as it is supported by substantial evidence." *Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir.1972).

### Discussion

A review of the record shows that Plaintiff, who was forty-two (42) years old in January 1999, the date her disability was determined to have ceased, has three years of college with past relevant work experience as a police dispatcher. (R.pp. 73, 155, 501). In order to be considered "disabled" within the meaning of the Social Security Act, Plaintiff must show that she has an impairment or combination of impairments which prevent her from engaging in all substantial gainful activity for which she is qualified by her age, education, experience and functional capacity, and which has lasted or could reasonably be expected to last for at least twelve (12) consecutive months. Further, even where a disability determination has been made, as was the case here, Plaintiff's entitlement to disability benefits will be found to have ceased if the evidence shows that medical improvement relating to her ability to work as occurred, and that she is currently able to engage in substantial gainful activity. 20 C.F.R. § 404.1594(a) and (b). The term "medical improvement" is defined as any decrease in the medical severity of a claimant's impairment which was present at the time of the most recent favorable medical decision that the claim-

ant was disabled. 20 C.F.R. § 404.1594(b)(*l* )(I).[3]

After review of the evidence and testimony in the case, the ALJ determined that the evidence established that there had been medical improvement in the Plaintiff's condition since August 27, 1994 such that by January 1, 1999 Plaintiff had the residual functional capacity to perform a significant range of sedentary work[4], and that her entitlement to DIB and SSI therefore ended effective March 31, 2000, the end of the second calendar month after the month in which the disability ceased. (R.pp. 21–22). Plaintiff asserts that in reaching this decision, the ALJ erred by failing to properly consider new evidence, by failing to reconcile the fact that the state agency medical opinions upon which he relied considered only Plaintiff's seizure disorder and did not consider her additional impairments, by failing to properly consider the effects of Plaintiff's numerous medications upon her ability to work, by improperly discounting the credibility of witness testimony, and by failing to "explore all the relevant facts when Plaintiff [was] unrepresented by counsel." However, after careful review and consideration of the record in this case and the arguments of the parties, the undersigned finds and concludes that the decision to deny benefits after March 2000 is supported by substantial evidence as that term is defined in the relevant caselaw, and that the decision of the Commissioner should therefore be affirmed.

At the time of the original decision in August 1994, Plaintiff was found to be

---

**3.** The most recent favorable medical decision that the Plaintiff was disabled was August 27, 1994. *Defendant's Brief,* p. 5. *see* (R.pp. 146–154).

**4.** Sedentary work is defined as lifting no more than 10 pounds at a time and occasionally lifting and carrying articles like docket files,

ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met. 20 C.F.R. § 404.1567(a) (200$).

disabled because her severe impairments, including Systemic Lupus Erythematosus, with positive ANA results and central nervous system involvement and seizures, met the criteria for Listing 10.04 of the Listings of Impairments.[5] (R.p. 153). However, even though a favorable disability determination was made as of that date, continued entitlement to Social Security disability benefits is a matter that is subject to periodic review. 20 C.F.R. § 404.1594(a). It was as a result of this continuing disability review that the Agency notified the Plaintiff on January 15, 1999 that, due to medical improvement, she was no longer disabled effective January 1999, which in turn led to the appeals history previously cited and culminating in the ALJ's decision of February 24, 2003. Further, even though the decision of the Commissioner is dated February 24, 2003, the issue before this Court is whether the record provides substantial evidence to support the ALJ's determination that Plaintiffs condition had improved such that her disability had ceased as of January 1999, not what her condition was on the date of the decision.[6] *See Acquiescence Ruling (AR)* 92–2(6). 1992 WL 425419, at *2 (SSA 1992) [In an appeal of a cessation determination, "the [Commissioner] considers what the [Plaintiffs] condition was at the time of the cessation determination, not the claimant's condition at the time of the disability hearing/reconsideration determination, ALJ decision or Appeals Council decision."]. The record contains substantial evidence to support the ALJ's determination that Plaintiff's medical condition had improved such that

she was no longer entitled to disability benefits as of January 1999.

The record reflects that Dr. Frank Harper (Plaintiff's treating physician), who had opined prior to the initial decision that Plaintiff was disabled due to her seizure activity associated with Systemic Lupus; (R.p. 324); consistently found on examination following Plaintiff's disability determination of August 1994 that her condition was improving. In June 1997, Dr. Harper noted that Plaintiff had had only one minor seizure in the preceding four months, and that Plaintiffs seizures were satisfactorily controlled with medication. (R.p. 362); *see also* (R.pp. 359–361). Dr. Harper further opined at that time that Plaintiff was medically stable without any physical signs of an active disease. Progress notes from East Cooper Internal Medicine dated September 17, 1997 also indicated that Plaintiff's seizures were stable. (R.p. 336). Four months after her June 1997 visit, Dr. Harper noted in October 1997 that Plaintiff's preceding four months had again been "uneventful", and that Plaintiff's Lupus was probably in remission. Dr. Harper noted that Plaintiff's fibromyalgia like syndrome was a more persistent problem than her Lupus at that time, but that even this condition was stable on medication. (R.p. 363). Subsequent treatment notes from East Cooper Internal Medicine from December 1997 through January 1998 reflect that Plaintiff's seizures were "non-recurrent". (R.pp. 336–337).

By February 1998, Dr. Harper noted that Plaintiff was not having any recurrence of her Lupus problems and had not

**5.** In the Listings of Impairments, "[e]ach impairment is defined in terms of several specific medial signs, symptoms, or laboratory test results." *Sullivan v. Zebley,* 493 U.S. 521, 530, 110 S.Ct. 885, 107 L.Ed.2d 967 (1990). A claimant is presumed to be disabled if their impairment meets the criteria of an impair-

ment set forth in the Listings. *See* 20 C.F.R. §§ 416.925, 416.926 (2003).

**6.** Indeed, the record reflects that Plaintiff filed a second application for disability, which resulted in her being found to have again become disabled as of February 25, 2003. *See Attachments to Plaintiffs Brief.*

any recurrent seizures. An extremity exam revealed no signs of active joint inflammation, although Plaintiff did have "trigger points" in some muscle areas. Dr. Harper believed Plaintiff had fibromyalgia with some depression, for which he indicated she needed to continue taking Prozac on a regular basis. (R.p. 364). In June 1998, Dr. Harper opined that Plaintiff was "reasonably stable", that she had had a fairly good interval since he had last seen her, and that she was taking medications for headaches. Physical examination was generally unremarkable except for "slightly puffy" hands. (R.p. 365).

On May 6, 1998, Plaintiff reported to neurologist Dr. John Plyler that she had not had any seizures and was doing well on her medication regimen. (R.p. 341). Plaintiff did go to the emergency room on August 17, 1998 complaining of recent seizure activity, but it was noted that Plaintiff was not taking her anticonvulsant medication properly at that time. (R.pp. 333, 337). When Plaintiff subsequently went back to Dr. Plyler for a follow-up on September 16, 1998, she reported no further seizures. (R.p. 342).

On January 13, 1999, state agency medical consultant Dr. T.K. Baker reviewed Plaintiff's records and completed a physical residual functional capacity assessment in which he concluded that Plaintiff had no exertional limitations and could frequently climb ramps and stairs, balance, stoop, kneel, crouch, and crawl, but never climb ladders, ropes or scaffolds. Dr. Baker further found that Plaintiff should avoid all exposure to hazards such as machinery and heights, but that she had no manipulative, visual, or communicative limitations. (R.pp. 369–375). A second state agency medical consultant, Dr. Richard Weymouth, opined on April I, 1999 that Plaintiff should avoid concentrated exposures to hazards such as machinery and heights, but otherwise had no exertional, postural, manipulative, visual, or communicative limitations. (R.pp. 376–383).

The record reflects that, later, Plaintiff was treated for various complaints by Dr. Richard Mills from January 2001 through March 2001. Dr. Mills noted that Plaintiff had had no seizure activity and no acute changes with regard to her Lupus. Dr. Mills' records also reflect that Plaintiff's headaches were stable with treatment, while medication helped her complaints of pain. He did note, however, that Plaintiff had diabetes, which was poorly controlled. (R.pp. 402–407). Dr. Mills referred Plaintiff to Dr. David Wenzel on March 21, 2001, for evaluation of complaints of paresthesias [7] of her left hand and feet, who found on examination that Plaintiff had 5/5 strength throughout all major muscle groups, that her muscle tone was appropriate, and that there was no demonstrable sensory loss except for in Plaintiff's great toes bilaterally and near the distal arches. Plaintiff reported to Dr. Wenzel that her Lupus was well controlled with medication and that she had not had a seizure for two years. (R.pp. 417–419).

A subsequent nerve conduction study performed by Dr. Wenzel on April 6, 2001 indicated Plaintiff might have mild peripheral polyneuropathy effecting her lower extremities. (R.p. 421). Plaintiff's neuropathic symptoms were treated with Neurotin, an anticonvulsant used to treat neuralgia, which helped her neuropathic symptoms but left her somewhat sedated. Plaintiff's headaches were satisfactorily controlled with Maxalt, a medicine used to treat migraine headaches. (R.pp. 423–424).

7. An abnormal touch sensation such as burning, prickling, or formication, often in the absence of external stimulus, *Dorland's Illustrated Medical Dictionary,* (28th ed.1994), p. 1234.

By December 2001, Dr. Wenzel noted that Plaintiff was not taking any medication for her Lupus, and an examination revealed 5/5 muscle strength throughout both legs with moderate tenderness in the lumbosacral paraspinous region. Plaintiff did complain of back and leg pain, and an MRI of her lumbar spine showed mild degenerative disc disease. (R.p. 425–427). Dr. Wenzel recommended physical therapy, and treatment notes from January 2002 indicate that physical therapy was "somewhat helpful" in alleviating Plaintiffs back and leg pain. (R.p. 430). Dr. Wenzel also noted that Plaintiff never filled her prescription for Neurotin as ordered on her December 2001 visit. When Plaintiff did complain of seizure activities ten days prior to her office visit, Dr. Wenzel noted that it sounded as though Plaintiff had been non-compliant. (R.p. 430). *See Johnson v. Bowen,* 866 F.2d 274, 275 (8th Cir.1989) [Claimant's failure to follow prescribed medical treatment inconsistent with complaints of disabling seizures]. Dr. Wenzel also noted that Plaintiff's back pain had improved, and that no further intervention was needed for that problem. *Id.*

Plaintiff underwent a psychological evaluation on February 12, 2002 by Dr. Barton Saylor, who noted that Plaintiff had been working in retail prior to November 2001, but that she had found it difficult due to the physical stressors of her job which caused pain in her legs and back. Dr. Saylor assigned Plaintiff a full score I.Q. of 80, placing her in the low average range of intellectual functioning, and concluded that her physical limitations would likely make it difficult for her to do anything but in a very individually designed work environment, and that her physical discomfort would also make it difficult for her to operate efficiently in an "intellectual manner". (R.pp. 441–444). In a medical source statement (mental) completed February 13, 2002, Dr. Saylor opined that Plaintiff had no limitations in her ability to understand and remember short, simple instructions; slight limitations in her ability to carry out simple, short instructions; slight limitations in her ability to understand and remember detailed instructions; moderate limitations in her ability to carry out detailed instructions; and slight limitations in her ability to make judgments on simple work-related decisions; slight limitations in interacting appropriately with the public; slight limitations in interacting appropriately with supervisors and co-workers; moderate limitations in responding appropriately to work pressure in a usual work setting; and slight limitations in responding appropriately to changes in a routine work setting. He concluded that Plaintiff had the capacity for performing simple tasks and reasoning, but that she might find more complicated problems or multiple simultaneous demands very frustrating, with her limitations due primarily to physical health problems with minimal contribution from depression secondary to chronic health problems. (R.pp. 445–446).

On April 24, 2002, Dr. Mills completed a medical source statement (physical) in which he opined that Plaintiff could perform the lifting requirements for sedentary work, stand less than two hours in an eight hour work day because of neuropathy and pain, but that she could alternate between sitting and standing to relieve discomfort; and that she could never climb, balance, kneel, crouch, crawl, or stoop. He also opined that Plaintiff was limited in manipulative functions to occasional reaching, handling, fingering, and feeling; but that she had unlimited visual and communicative functions. She was limited environmentally due to her seizures and neuropathy. (R.pp. 461–464).

After review of these medical records and consideration of the testimony at the hearing, the ALJ determined that there had been medical improvement in

Plaintiff's condition since August 27, 1994, the comparison point, that that medical improvement was related to her ability to work, and that commencing January 1, 1999 she had the residual functional capacity to perform sedentary work reduced to a range of unskilled work in a low stress environment. (R.p. 21). The records of Dr. Harper, Dr. Plyler and Dr. Saylor provide substantial evidence to support this determination; *see Craig v. Chater,* 76 F.3d 585, 589–590 (4th Cir.1996) [noting importance of treating physician's opinion]: *Hunter v. Sullivan,* 993 F.2d 31, 35 (4th Cir.1993) [ALJ may properly give significant weight to an assessment of an examining physician]: *Richardson v. Perales,* 402 U.S. 389, 408, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971) [assessment of examining, non-treating physician may constitute substantial evidence in support of a finding of non-disability]; as do the opinions of the state agency physicians. *See Smith v. Schweiker,* 795 F.2d 343, 345 (4th Cir.1986) [opinion of non-examining physicians can constitute substantial evidence to support the decision of the Commissioner]. The ALJ specifically notes in his decision how the records of both Dr. Harper and Dr. Plyler show that Plaintiff's Lupus and seizure disorder were stable with treatment with no signs of any significant systemic involvement, as well as that Dr. Saylor's assessment that Plaintiff could understand and remember short, simple instructions and would have slight difficulty in interacting appropriately with the public, supervisors, and co-workers, limited her to unskilled, low stress work. (R.pp. 18–20). In arguing her case for disability, Plaintiff notes that this same ALJ found Plaintiff's impairments to be disabling only one day after the date of this unfavorable decision.[8] However, as has previously been stated,

the issue before the ALJ at that time (as well as before this Court) is not whether Plaintiff's impairments may have later re-achieved disabling severity, but whether substantial evidence supports the decision that her impairments were not of disabling severity as of January 1999.

Plaintiff argues that the ALJ conducted an improper credibility analysis in reaching his decision. However, the undersigned does not find any reversible error in this aspect of the decision. The ALJ noted Plaintiff's testimony that she suffered from severe and chronic pain which (she alleged) rendered her unable to perform many daily activities, and that she also alleged severe depression, fatigue, and poor memory. (R.p. 19); *see* (R.pp. 39–40). In deciding that this testimony and that of Plaintiff's husband with respect to the severity of her condition was not credible, the ALJ found that the medical evidence did not corroborate her allegations, that there was no evidence of any emergency treatment activity or severe disabling headaches, that Plaintiff had in fact denied having any seizures since August 1998, that no physician had stated that Plaintiff could not work due to any physical or mental condition during the relevant time period or that Plaintiff was significantly limited by a seizure condition, that there was no evidence of any significant systemic involvement or that Plaintiff had had frequent flare-ups of symptoms of Lupus other than generalized complaints of muscle aches and joint pain, that her symptoms of depression were controlled with Prozac, and that a psychological evaluation found that she would have no limitation in understanding and remembering short, simple instructions with slight difficulty in interacting appropriately with the

---

8. Plaintiff filed her second claim for benefits apparently at the suggestion of the ALJ. (R.p. 48).

public, supervisors, and co-workers. (R.pp. 18–20). Plaintiff herself testified that she engaged in such activities as walking around a track, doing the laundry, attending church, driving, and even looking for work. (R.pp. 29, 187–188). *Cf. Bentley v. Shalala*, 52 F.3d 784, 786 (8th Cir.1995) [record of contemplating work indicates claimant did not view his pain as disabling].

The ALJ concluded on this record that the medical evidence failed to show severe symptoms of any condition which would prevent the minimal physical exertion required of sedentary work reduced by a limitation to unskilled, low stress work as of January 1999. (R.p. 19). Again, there is substantial evidence to support this finding. *See Lee v. Sullivan*, 945 F.2d 687, 693–694 (4th Cir.1991) [denial of benefits affirmed where physicians who examined claimant and heard all of his complaints failed to give an opinion that he was totally and permanently disabled]; *Cruse v. Bowen*, 867 F.2d 1183, 1186 (8th Cir.1989) ["The mere fact that working may cause pain or discomfort does not mandate a finding of disability"]; *Craig v. Apfel*, 212 F.3d 433, 436 (8th Cir.2000) [simply because working might cause discomfort does not mandate a finding of disability]: *Adams v. Chater*, 93 F.3d 712, 715 (10th Cir.1996) ["We decline claimant's invitation to adopt a rule requiring an ALJ to make a specific written finding on each witness's credibility. . . ."]; Hays, 907 F.2d at 1456 [it is the responsibility of the ALJ to weigh the evidence and resolve conflicts in that evidence]; *Hunter*, 993 F.2d at 35 [ALJ may properly consider inconsistencies between a plaintiffs testimony and the other evidence of record in evaluating the credibility of the plaintiff's subjective complaints]; *Jolley v. Weinberger*, 537 F.2d 1179, 1181 (4th Cir.1976) [finding that objective medical evidence, as opposed to the claimant's subjective complaints, supported an inference that he was not disabled];

*Mickles v. Shalala*, 29 F.3d 918, 925–926 (4th Cir.1994) [In assessing the credibility of the severity of reported subjective complaints, consideration must be given to the entire record, including the objective and subjective evidence].

Plaintiff's argument that reversal is warranted because the ALJ did not specifically mention Plaintiff's medications in his opinion or the effect those medications might have on her ability to stay alert or concentrate is without merit. There is no record of any physician ever opining that Plaintiff's side effects from medications rendered her unable to work. Further, while Plaintiff is correct that the ALJ did not specifically reference *limitations* caused by medications in his opinion, he did discuss how Plaintiff's medications *improved* her condition, noting how Prozac kept her depression under control as well as how other medications kept her seizures and complaints of headaches well controlled. (R.pp. 18–20). The ALJ also specifically found that Plaintiff's mental condition might result in her having moderate difficulties in maintaining concentration, persistence, and pace, which is why he specifically limited her to unskilled, low stress work. These limitations adequately and appropriately account for any difficulties Plaintiff would have in maintaining concentration and pace at work. *Cf. Woods v. Barnhart*, No. 05–432, 2006 WL 2583097 at *11 (D.Del. Sept. 7, 2006) [By restricting plaintiff to jobs with simple instructions, the court concluded the ALJ adequately accounted for plaintiff's moderate limitation in maintaining concentration, persistence or pace]; *Smith–Felder v. Commissioner*, 103 F.Supp.2d 1011, 1014 (E.D.Mich.2000) [hypothetical question including work involving only a mild amount of stress and only "simple one, two, or three step operations" properly comports with findings of ALJ as to plaintiff's moderate limitations in concentration, social

functioning, and tolerance of stress]. Hence, the ALJ's failure to specifically mention whether medications played a role in Plaintiff's deficiencies in this area are not grounds for reversal of the decision. *Benskin v. Bowen,* 830 F.2d 878, 883 (8th Cir.1987) [an arguable deficiency in opinion writing is not cause for reversing the Commissioner].

Finally, Plaintiff's complaint that the decision should be reversed and remanded because she was unrepresented, and the ALJ did not in turn "scrupulously and conscientiously" explore all of the relevant facts, is without merit. Plaintiff argues that the transcript of her first hearing shows that she had difficulty understanding the judge's explanations regarding the nature of the proceedings and that the ALJ's questioning of her did not "constitute a fair hearing." *See* (R.pp. 27–31). Plaintiff further argues that her remand hearing was also not conducted fairly. *See* (R.pp. 34–51). *See Lashley v. Secretary of HHS,* 708 F.2d 1048, 1051–1052 (6th Cir. 1983)["[T]he administrative law judge is under a special duty to develop the record when the claimant appears without counsel."]. However, the record reflects that at both hearings Plaintiff was specifically advised that she was entitled to an attorney, and that the ALJ would reschedule the case if she would like to pursue representation. (R.pp. 26, 36–37). On both occasions, Plaintiff indicated she wanted to proceed with the hearing. *Id.* The transcripts of both hearings reflect that the ALJ then took testimony, and also gave Plaintiff an opportunity to question the vocational expert at the second hearing (there was no vocational expert taken at the first hearing). *See generally,* (R.pp. 23–51). Plaintiff's argument that her hearing testimony would have been handled differently and would have been more favorable to her if she had had an attorney present is sheer speculation. While an attorney probably would have gone into

more detailed and precise questioning of the vocational expert, there is no indication in these transcripts that Plaintiff was treated unfairly, or was not given every opportunity to present her case. *Holden v. Califano,* 641 F.2d 405, 408 (6th Cir. 1981) ["While the absence of counsel might cause us to scrutinize the record with care, it alone is not a grounds for reversal or remand."].

### *Conclusion*

Substantial evidence is defined as "... evidence which a reasoning mind would accept as sufficient to support a particular conclusion." *Shively v. Heckler,* 739 F.2d 987, 989 (4th Cir.1984). As previously noted, if the record contains substantial evidence to support the decision (i.e., if there is sufficient evidence to justify a refusal to direct a verdict were the case before a jury), this Court is required to uphold the decision, even should the Court disagree with the decision. *Blalock,* 483 F.2d at 775.

Under this standard, the record contains substantial evidence to support the conclusion of the Commissioner that the Plaintiff was not disabled within the meaning of the Social Security Act during the relevant time period. Therefore, it is recommended that the decision of the Commissioner be **affirmed.**